Robert E. GREENE, Acting Regional Director for the First Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MR. WICKE LTD. Co. and Local 443, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondents.

Civ. No. 11899.

United States District Court
D. Connecticut.

June 29, 1967.

Henry M. Kelleher, Boston, Mass. (Arnold Ordman, Dominick L. Manoli, Julius G. Serot, Washington, D. C., Robert E. Greene, Boston, Mass.), for petitioner.

David M. Hoffman, Wayne, N. J., for respondent Mr. Wicke Ltd. Co.

Hugh J. Beins, Washington, D. C., for respondent Local 443, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

TIMBERS, Chief Judge.

## QUESTIONS PRESENTED

The essential issues raised by the instant petition brought pursuant to Section 10(j) of the National Labor Relations Act (hereinafter the Act), 29 U.S. C. § 160(j), for temporary injunctive

relief pending disposition by the National Labor Relations Board (hereinafter the Board) of charges of unfair labor practices on the part of respondents, are whether the Board has reasonable cause to believe that respondents have engaged in unfair labor practices, and if so, whether the extraordinary remedy of a temporary injunction should be granted in order to preserve the status quo or to prevent irreparable injury.

Having held a full hearing on May 1, 1967 with respect to such issues and having considered the briefs of the respective parties and other papers on file, including the transcript of the unfair labor practice hearing conducted by the Board in this matter on April 4, 5 and 6, 1967, the Court is of the opinion that the instant petition for preliminary injunction should be granted.

The Court makes the following findings of fact and conclusions of law, pursuant to Rule 52, Fed.R.Civ.P., constituting the grounds of the Court's action in this case.

### FINDINGS OF FACT

1. Petitioner, Acting Regional Director of the First Region of the Board, an agency of the United States, filed the petition herein for and on behalf of the Board.

2(a). On or about November 14, 1966, International Ladies' Garment Workers Union, AFL-CIO (hereinafter the ILGWU), pursuant to the provisions of the Act, filed with the Board a charge alleging that respondent Mr. Wicke has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a) (1), (2) and (3) of the Act, 29 U.S.C. § 8(a) (1), (2) and (3).

(b) On or about December 12, 1966, the ILGWU, pursuant to the provisions of the Act, amended the charge originally filed with the Board on or about November 14, 1966, alleging that respondent Mr. Wicke has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a) (1), (2) and (3) of the Act, 29 U.S.C. § 8(a) (1), (2) and (3).

(c) On or about December 14, 1966, the ILGWU, pursuant to the provisions of the Act, filed with the Board a charge alleging that respondent Local 443, Teamsters, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (1) (A) and (2) of the Act, 29 U.S.C. § 8(b) (1) (A) and (2).

(d) On or about January 20, 1967, the ILGWU, pursuant to the provisions of the Act, filed with the Board a charge alleging that respondent Mr. Wicke has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a) (1) and (5) of the Act, 29 U.S.C. § 8(a) (1) and (5).

3. The aforesaid charges and amended charges were referred to petitioner as Acting Regional Director of the First Region of the Board.

4. On or about January 13, 1967, upon certain of said charges, the General Counsel of the Board, on behalf of the Board, by Robert E. Greene, Acting Regional Director for the First Region, issued a complaint pursuant to Section 10 (b) of the Act, 29 U.S.C. § 160(b), alleging that respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8 (a) (1), (2) and (3) and Sections 8(b) (1) (A) and (2) of the Act, 29 U.S.C. § 8(a) (1), (2) and (3) and § 8(b) (1) (A) and (2).

5. On or about February 21, 1967, upon said charges, the General Counsel of the Board, on behalf of the Board, by Robert E. Greene, Acting Regional Director for the First Region, issued an amended complaint pursuant to Section 10(b) of the Act, 29 U.S.C. § 160(b), alleging that respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(a) (1), (2), (3) and (5) and Sections 8(b) (1) (A) and (2) of the Act, 29 U.S. C. § 8(a) (1), (2), (3) and (5) and § 8(b) (1) (A) and (2).

6. Respondent Mr. Wicke, a Connecticut corporation, maintains its principal office and place of business at 75 Daggett Street, New Haven, Connecticut, and

is now and continuously has been engaged at said plant in the manufacture, sale and distribution of women's skirts. In the operation of its business respondent Mr. Wicke annually receives at its principal place of business directly and/or indirectly from points located outside the State of Connecticut materials having a value in excess of $50,000. Also, respondent Mr. Wicke annually ships from its principal place of business directly and/or indirectly to points located outside the State of Connecticut products having a value in excess of $50,000. Additionally, respondent Mr. Wicke annually performs services valued in excess of $50,000 for enterprises themselves engaged in interstate commerce within the meaning of the Act.

7. The ILGWU and respondent Local 443, Teamsters, both unincorporated associations, are organizations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment and conditions of work.

8. There is, and petitioner has, reasonable cause to believe that:

(a) On various dates in May and June, 1966, respondent Mr. Wicke, through its supervisors and agents, solicited its employees to join and support respondent Local 443, Teamsters, arranged meetings between its employees and representatives of Local 443, Teamsters, and allowed representatives of Local 443, Teamsters, to campaign and post notices in the plant during working hours.

(b) On or about May 20, June 30 and November 16, 1966, respondent Mr. Wicke, through its supervisors and agents, threatened its employees with termination or loss of work opportunities if they failed to support respondent Local 443, Teamsters, and execute dues checkoff authorizations, promised its employees economic benefits if they selected Local 443, Teamsters, as their collective bargaining representative, and interrogated its employees respecting their membership in and activities on behalf of the ILGWU.

(c) On or about June 20 and 27, 1966, respondent Local 443, Teamsters, through its business agent, threatened employees of respondent Mr. Wicke with termination or loss of work opportunities if they failed to select Local 443, Teamsters, as their collective bargaining representative.

(d) On or about May 26, 1966, respondents Mr. Wicke and Local 443, Teamsters, signed a recognition agreement at a time when Local 443, Teamsters, did not represent an uncoerced majority of the employees of Mr. Wicke.

(e) On or about June 20, 1966, respondents Mr. Wicke and Local 443, Teamsters, signed a collective bargaining agreement containing union security provisions at a time when Local 443, Teamsters, did not represent an uncoerced majority of the employees of Mr. Wicke.

(f) On or about June 30, 1966, respondent Mr. Wicke coerced its employees into signing forms authorizing it to check off dues for respondent Local 443, Teamsters.

(g) Since the dates specified in subparagraphs (e) and (f) above, respondents Mr. Wicke and Local 443, Teamsters, have continued to maintain and administer the said collective bargaining agreement, including its union security and dues check-off provisions, even though Local 443, Teamsters, has at no time represented an uncoerced majority of the employees of Mr. Wicke and even though the employees involved never voluntarily authorized dues check-offs.

(h) On or about June 30, 1966, respondent Mr. Wicke required its employees to become members of respondent Local 443, Teamsters, without affording them the 30 day grace period specified in Section 8(a)(3) of the Act, 29 U.S.C. § 8(a)(3).

(i) The acts and conduct of respondents set forth above, occurring in connection with the operation of respondent Mr. Wicke, have a close, intimate, and substantial relation to trade, traffic and

commerce among the several states and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

9. It may fairly be anticipated that, unless enjoined, respondents will continue and repeat the acts and conduct set forth above, or similar or like acts and conduct.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10(j) of the Act, 29 U.S.C. § 160(j), is empowered to grant injunctive relief.

2. Respondent Mr. Wicke is engaged in commerce within the meaning of Section 2(6) and (7) of the Act, 29 U.S.C. § 152(6) and (7).

3. Respondent Local 443, Teamsters, is a labor organization within the meaning of Sections 2(5) and 8(b) of the Act, 29 U.S.C. §§ 152(5) and 158(b).

4. There is, and petitioner has, reasonable cause to believe that respondents have engaged in unfair labor practices within the meaning of Section 8(a) (1), (2) and (3) and Section 8(b) (1) (A) and (2) of the Act, 29 U.S.C. § 158(a) (1), (2) and (3) and § 158(b) (1) (A) and (2), affecting commerce within the meaning of Section 2(6) and (7) of the Act, 29 U.S.C. § 152(6) and (7), and a continuation of these practices will impair the policies of the Act as set forth in Section 1 thereof, 29 U.S.C. § 151.

5. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained

from the commission, continuation or repetition of the improper acts and conduct set forth in the above findings of fact, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past.

## OPINION

Petitioner has charged respondents with unfair labor practices essentially consisting of the denial to the employees of Mr. Wicke Ltd. Co. of their right to self-determination and freedom of choice in the area of formation of a collective bargaining unit [1], by means of labor-management collusion and combined and separate acts of coercion aimed at establishing Local 443, International Brotherhood of Teamsters, as the sole bargaining representative for Mr. Wicke's employees without regard to the due procedures of the Act or to the independent desires or interests of the employees concerned.

■ The Board in this case has concluded its hearings, and its decision is currently pending; the instant petition for a preliminary injunction seeks to restore or preserve the status quo existing prior to the allegedly illegal assumption by Local 443 of the role of exclusive bargaining agent for Mr. Wicke's employees, and its allegedly improper recognition as such by the respondent company. In considering the propriety of granting the relief sought by petitioner, it is not this Court's function to usurp the primary responsibility of the Board in determining whether or not the violations of the Act, as charged, have occurred, but rather to find merely whether or not there is reasonable cause to believe that the alleged violations occurred.[2]

---

1. A right expressly secured to employees by the provisions of 29 U.S.C. § 157, interference with which fundamental right is an unfair labor practice on the part of an employer, under 29 U.S.C. § 158(a) (1), and on the part of a union, under 29 U.S.C. § 158(b) (1) (A).

2. See McLeod for and on Behalf of N.L. R.B. v. Compressed Air, Foundation, Tunnel, Etc., Workers, 292 F.2d 358, 359 (2 Cir. 1961); Douds v. International Longshoremen's Ass'n, 241 F.2d 278, 281 (2 Cir. 1957); see also McLeod v. Local 25, International Brotherhood of Elec-

■ Upon the entire record, this Court has concluded that there is indeed reasonable cause to believe that respondents committed the violations of which they are accused, that there is, in other words, a "reasonable possibility" that the unfair labor charges will be sustained.[3] The campaign of assistance to respondent Local 443 undertaken by respondent company through its officers and agents, the direct and indirect coercion exercised by both respondents, the hasty short-circuiting of the Act's procedures, appear all too clearly in the evidence, and it seems quite plain that the respondent union simply did not represent an uncoerced majority of Mr. Wicke's employees at the time it claimed exclusive bargaining authority and was hastily extended recognition by respondent employer.[4]

■ This Court is of the opinion that equitable relief would be "just and proper"[5] under the circumstances disclosed by the instant dispute. While issuance of a preliminary injunction pursuant to Section 10(j) of the Act, 29 U.S.C. § 160(j), is the grant of an extraordinary remedy, such relief is appropriate here since petitioner has satisfied the Court that an injunction is necessary in order to restore or preserve the status quo or to prevent irreparable harm.[6] Petitioner seeks an order essentially requiring respondents to abandon their existing collective bargaining agreement, and further requiring the employer to withdraw its recognition of Local 443 as exclusive bargaining agent for the company's employees; such a remedy is entirely warranted, for it serves the customary purpose of restoring all the parties to the relative positions occupied prior to the commencement of the unfair labor practices charged to respondents, without embodying any semblance of affirmative relief.[7] It is worthy of note that the Board has made full use of the administrative machinery at its disposal; as previously mentioned, the unfair labor practice hearing has already been conducted, and the Board's decision is pending. In the meantime, the Board has quite properly requested that the status quo be restored so that the underlying issues may be preserved for orderly determination by the Board and the Court of Appeals, and interim and irreparable injury to the employees' interests may be avoided. The Court does not consider itself to be confronted with a *fait accompli*, in the face of which it is powerless to act; it is instead wholly proper for the authority of the Court to be utilized in bringing the captive status of the employees involved to an end. Indeed, it would be inappropriate to permit the continued enforcement of the illegal collective bargaining agreement between respondents, since it ap-

trical Workers, 344 F.2d 634, 638 (2 Cir. 1965); Douds v. Milk Drivers & Dairy Employees Union, 248 F.2d 534, 537 (2 Cir. 1957); McLeod v. American Federation of Television and Radio Artists, 234 F.Supp. 832, 836 (S.D.N.Y.1964), aff'd per curiam, 351 F.2d 310 (2 Cir. 1965).

3. See McLeod v. Local 25, International Brotherhood of Electrical Workers, supra note 2, at 638; McLeod v. Business Machine & Office Appliance Mechanics, 300 F.2d 237, 241 (2 Cir. 1962).

4. Such assumption by respondent union of the status of sole bargaining representative for the employees, and its recognition as such by respondent employer, in themselves constitute unfair labor practices by both respondents even if there existed a good faith belief that the union enjoyed the uncoerced consent of the majority of employees affected. See International Ladies' Garment Workers' Union v. N.L.R.B., 366 U.S. 731, 732–733 (1961).

5. See 29 U.S.C. § 160(j); McLeod v. Local 25, International Brotherhood of Electrical Workers, supra note 2, at 639.

6. See McLeod v. General Electric Company, 366 F.2d 847, 849–850 (2 Cir. 1966), set aside and remanded on other grounds, 385 U.S. 533 (1967).

7. Compare Fusco for and on Behalf of N.L.R.B. v. Richard W. Kaase Baking Co., 205 F.Supp. 465, 476–479 (N.D. Ohio 1962), with McLeod v. General Electric Company, supra note 6, at 848–850.

pears that such agreement operates as a continuous denial to the employees of their most basic rights[8] under the Act. The instant petition for a preliminary injunction pending determination of the unfair labor practice charges by the Board is therefore granted.

### ORDER

ORDERED that pending final disposition by the National Labor Relations Board of the charges of unfair labor practices brought against respondents, respondent Mr. Wicke Ltd. Co., its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with it, be, and the same hereby are, enjoined and restrained from:

(a) Soliciting its employees to join or support Local 443, Teamsters; arranging meetings between its employees and representatives of Local 443, Teamsters; or rendering any other or further unlawful assistance to Local 443, Teamsters;

(b) Continuing to recognize Local 443, Teamsters, as the collective bargaining representative of its employees; and

(c) Forcing any employees to sign dues check-off authorizations and from deducting any further monies from the wages of its employees as dues for Local 443, Teamsters;

And that respondents Mr. Wicke Ltd. Co. and Local 443, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, their officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, be, and the same hereby are, enjoined and restrained from:

(d) Threatening employees with termination or loss of work opportunities if they fail to support Local 443, Teamsters, or to execute dues check-off authorizations; and from promising em-

ployees economic benefits if they support Local 443, Teamsters;

(e) Administering or giving any further force or effect to their current collective bargaining agreement; and

(f) Requiring any employees to become members of Local 443, Teamsters, under the union security clause contained in their current collective bargaining agreement.

---

8. See 29 U.S.C. § 157; see also 29 U.S.C. § 151; N.L.R.B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 265–266 (1938).