**Harold M. KOWAL, Acting Director for the First Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HUNTER OUTDOOR PRODUCTS, INC., and**

**Local 29, Retail, Wholesale and Department Store Union, AFL–CIO, Respondents.**

Civ. A. No. 68–120.

United States District Court
D. Massachusetts.

June 18, 1968.

Henry M. Kelleher, N.L.R.B., Boston, Mass., for plaintiff.

Lipson, Sadow & Marcus, New York City, Laurence S. Fordham, Foley, Hoag & Eliot, Boston, Mass., for defendant Hunter Outdoor Products, Inc.

Harold L. Luxemburg, New York City, for defendant Local 29.

John McMahon, Boston, Mass., for ILGW.

## MEMORANDUM OF DECISION

JULIAN, District Judge.

This cause came on to be heard upon the verified petition of Harold M. Kowal, Acting Director for the First Region of the National Labor Relations Board (hereinafter called the Board), seeking a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act (29 U.S.C. § 160(j)) (hereinafter called the Act), pending the final disposition of the matters involved herein pending before the Board.

Both respondents filed answers to the petition. A hearing on the issues raised by the petition and answers was held on March 12, 1968, at which time all parties were afforded full opportunity to be heard and to present evidence. The Court has fully considered the petition, answers, evidence, and arguments of counsel.

The Court makes the following findings of fact:

1. Petitioner is Acting Director for the First Region of the Board, an agency

of the United States, and filed the petition for and on behalf of the Board.

2. On November 17, 1967, the International Ladies' Garment Workers Union, AFL–CIO (hereinafter called the ILGW), filed with the Board, pursuant to the provisions of the Act, a charge alleging that respondent Hunter Outdoor Products, Inc. (hereinafter called Hunter) has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a) (1) and 8(a) (2) of the Act.

3. Thereafter, on November 22, 1967, January 4, 1968, and January 12, 1968, respectively, the ILGW filed with the Board pursuant to the provisions of the Act, a first, second, and third amended charge, each amending the charge originally filed on or about November 17, 1967. These three amended charges alleged, respectively, that respondent Hunter has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a) (1) and (1) [sic] of the Act [first amended charge], Sections 8(a) (1) and (2) of the Act [second amended charge], and Sections 8(a) (1), (2) and (3) of the Act [third amended charge].

4. On November 21, 1967, the ILGW filed with the Board pursuant to the provisions of the Act a charge alleging that respondent Local 29, Retail, Wholesale and Department Store Union, AFL–CIO (hereinafter called Local 29), has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (1) (A) of the Act.

5. Thereafter, on January 4, 1968, and January 12, 1968, the ILGW filed with the Board pursuant to the provisions of the Act, a first and second amended charge, respectively, each amending the original charge filed on November 21, 1967. The first amended charge alleged that Local 29 had engaged in, and was engaging in, unfair labor practices within the meaning of Section 8(b) (1) (A). The second amended charge alleged that Local 29 had engaged in, and was engaging in, such practices within the meaning

of Sections 8(b) (1) (A) and 8(b) (2) of the Act.

6. The aforesaid charges and amended charges were referred to petitioner as Acting Director for the First Region of the Board.

7. On January 19, 1968, General Counsel for the Board, acting on behalf of the Board, issued a complaint pursuant to Section 10(b) of the Act. The complaint alleges that Hunter and Local 29 have engaged in, and are engaging in, unfair labor practices within the meaning of Sections 8(a) (1), (2) and (3), and Sections 8(b) (1) (A) and 8(b) (2).

8. There is, and petitioner has, reasonable cause to believe as follows:

(a) Respondent Hunter is a New York corporation licensed to do business in Massachusetts which maintains its main office and principal place of business in Long Island City, New York. Hunter maintains a plant in New York where respondent Local 29 represents the employees.

(b) In October 1966 and September 1967, respectively, Hunter acquired, and has since maintained, plants on Union Street and on State Road in North Adams, Massachusetts, where it engages in the manufacture, sale and distribution of sleeping bags, tents and related products. In the operation of its business Hunter annually receives at its North Adams plants directly from points located outside of Massachusetts materials having a value exceeding $50,000. Hunter also annually ships from its North Adams plants directly to points located outside Massachusetts products having a value exceeding $50,000.

(c) The ILGW and respondent Local 29 are both unincorporated associations in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment and conditions of work.

(d) On various occasions in September and October 1967, at a time when representatives of the ILGW were conducting

an organizational campaign among Hunter's North Adams employees, Local 29 through its representatives threatened Hunter's employees with discharge, loss of economic benefits, and plant closure, for the purpose of forcing them to join Local 29 and to reject any affiliation with the ILGW.

In September 1967 Hunter's manager called a meeting of the employees and informed them that a representative of the union [Local 29] at Hunter's New York plant wanted to speak to them, that Hunter did not want any trouble or work stoppage, that the union had threatened to stop the trucks from bringing work from New York to the North Adams plants if its representative was not permitted to talk to them. He asked the employees to listen to the union representative.

About a week later another meeting of the employees was called. The meeting was announced over the plant public address system and was held at the plant during working hours. About 150 employees attended. A representative of Local 29 addressed the meeting. He told the employees in attendance that the trucks would not be allowed to bring work to the North Adams plants if they did not have a union shop there, that the employees had to join Local 29. He promised two pay raises of 10 cents per hour, one in October, and the other in February. He told them he had the names of employees who had been chosen to be stewards.

At a subsequent meeting of employees held on or about October 3, in the evening in a hall outside the plant, about 100 employees being in attendance, the same representative of Local 29 again spoke. He reiterated that the employees had to join Local 29 within 30 days. One of the employees told him that the employees were not being allowed to have an election and to vote for a union. "Can we or can we not," she asked. He replied that they could not. They then proceeded to the designation of the stewards proposed by the representative.

On the day following this meeting Hunter's vice president addressed a meeting of all the employees. The meeting took place at the plant. He referred to the meeting of the night before. He said he wanted no trouble with unions, that as long as they were having a union Local 29 was the lesser of two evils, and that if ILGW was chosen he would close the plants. For several days following this meeting representatives of Local 29 distributed Local 29 authorization cards to employees in the plants during working hours and solicited them to designate Local 29 as their collective bargaining representative.

In the early part of October Hunter granted the employees a wage raise of 10 cents per hour.

Hunter permitted Local 29, but not ILGW, to conduct a campaign of solicitation inside the plants during working hours.

Hunter interfered with ILGW's attempt to solicit the support of the employees outside the plants. On one occasion when agents of ILGW were distributing leaflets to employees outside the State Street plant urging them to join that union by signing an attached form authorizing ILGW to act as the employees' collective bargaining representative, Hunter's general manager stood behind the agents and told the employees, "Don't take those leaflets. It's a lie." He grabbed the leaflets from the hands of one of the agents and said, "I'm Al Simone, and that is a lie, and you people better get out of here. You are not going to be here any more."

Hunter has on several occasions interrogated its employees respecting their union activities, and has kept their union activities under surveillance.

(e) Sometime before October 27, 1967, Hunter and Local 29 stipulated to submit the question of representation of the collective bargaining unit to an arbitrator and agreed to be bound by his award. It was further agreed that the arbitrator was to determine whether the existing collective bargaining agreement between

Hunter and Local 29 covering Hunter's employees in the New York plant also covered Hunter's employees in the North Adams plants, and if he decided that it did not, he was then to decide whether Local 29 represented a majority of the employees in the North Adams plants.

The arbitrator, on October 27, 1967, decided that the existing agreement did not cover the employees in North Adams. He further decided, on the basis of a comparison of cards designating Local 29 as the collective bargaining representative, that Local 29 represented 209 of the 261 employees at Hunter's two plants in North Adams.

Hunter and Local 29 were the only parties to the arbitration agreement. Neither Hunter's employees at the North Adams plants nor ILGW were represented in the proceedings before the arbitrator. The arbitrator made no inquiry whatever into the methods used to obtain from the employees the cards designating Local 29 as the collective bargaining representative.

(f) The methods used by the respondents to obtain authorization cards from the employees designating Local 29 as collective bargaining representative were calculated to coerce and did in fact result in coercing employees into signing such cards.

(g) On November 4, 1967, Hunter and Local 29 executed a collective bargaining agreement effective November 4, 1967, and continuing in effect until November 4, 1970, whereby Hunter recognized Local 29 as the sole and exclusive bargaining agent of the employees at its plants in North Adams, and agreed to recognize no other organization as the representative of any of the employees covered by the agreement. The agreement contains a union shop clause, a provision requiring Hunter to check off union dues and initiation fees, and other provisions relating to wages, hours, and other conditions of employment.

(h) At the time of the execution of the collective bargaining agreement Local 29 did not represent an uncoerced majority of the employees which the agreement purports to cover. At no time has Local 29 represented an uncoerced majority of Hunter's employees in the North Adams plants.

(i) Hunter and Local 29 have continued their collective bargaining relationship to the present time.

(j) Since November 4, 1967, both Hunter and Local 29, through their representatives, have threatened Hunter's employees with discharge and have promised the employees various benefits, conditioned on the employees' joining Local 29 and rejecting all affiliation with the ILGW.

9. There is no assurance that pending final disposition of the issues pending before the Board, either Hunter or Local 29 will, unless so ordered by the Court, refrain from further improper interference with the employees' right to designate a collective bargaining representative of their own choosing. On the contrary, it may fairly be anticipated that, unless enjoined, the respondents will continue and repeat the acts and conduct set forth in paragraph 8 above, or similar acts and conduct with consequent irreparable injury to the interests of the employees legally secured to them by Section 7 of the Act, 29 U.S.C. § 157—especially, in this case, their right to self-organization, and their right to bargain collectively through a representative of their own choosing.

10. The acts and conduct of respondents set forth in paragraph 8 above, in connection with the operation of Hunter's plants in North Adams, have a close, intimate and substantial relation to trade, traffic and commerce among the several states, and tend to lead to and have led to labor disputes burdening and obstructing commerce and the free flow of commerce.

CONCLUSIONS OF LAW

1. Under Section 10(j) of the Act, 29 U.S.C. § 160(j), this Court has jurisdiction to grant to petitioner such tempo-

rary relief or restraining order as the Court deems just and proper.[1]

■ 2. There is, and petitioner has, reasonable cause to believe:

(a) That respondent Hunter is engaged in commerce within the meaning of Sections 2(6) and 2(7) of the Act.

(b) That respondent Local 29 is a labor organization within the meaning of Sections 2(5) and 8(b) of the Act.

(c) That respondents have engaged in unfair labor practices within the meaning of Sections 8(a) (1), (2) and (3) and Sections 8(b) (1) (A) and 8(b) (2) of the Act, affecting commerce within the meaning of Sections 2(6) and 2(7) of the Act, and a continuation of these practices will impair the policies of the Act set forth in Section 1(b) thereof.

■ 3. To preserve the issues for the orderly determination provided in the Act, and to prevent irreparable injury to the interests of the employees secured to them by Section 7 of the Act, 29 U.S.C. § 157, it is just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation or repetition of the acts and conduct set forth in paragraph 8 above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past, including but not limited to the enforcement of the union shop clause and the check-off provisions contained in the collective bargaining

agreement referred to in paragraph 8(g) above, all as will be more specifically stated in the order granting the temporary injunction.

---

[1]. The meaning of the words "just and proper," in the context of this section, has been the subject of several recent decisions. Among them are the following: Angle v. Sacks, 1967, 10 Cir., 382 F.2d 655, 659; Minnesota Mining and Manufacturing Company v. Meter, 1967, 8 Cir., 385 F.2d 265, 270; McLeod v. General Electric Company, 1966, 2 Cir., 366 F.2d 847, 849; Greene v. Mr. Wicki Ltd. Co., 1967, D.Conn., 270 F.Supp. 1012, 1016; Greene v. Senco, Inc., 1968, D.Mass., 282 F.Supp. 690.