Gerard P. **FLEISCHUT**, Regional Director for the 26th Region of the National Labor Relations Board, Petitioner-Appellant,

v.

**NIXON DETROIT DIESEL, INC.**, Respondent-Appellee.

No. 88–5277.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 12, 1988.

Decided Oct. 7, 1988.

Joseph F. Frankl (argued), Joseph E. Mayer, Asst. Gen. Counsel, John W. Hornbeck, Deputy Asst. Gen. Counsel, N.L.R.B., Washington, D.C., Jane Vandeventer, N.L.R.B., Nashville, Tenn., for petitioner-appellant.

Russell F. Morris, Jr. (argued), Steven H. Taylor, Bass, Berry & Sims, Nashville, Tenn., for respondent-appellee.

Before KENNEDY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Petitioner-appellant, the Regional Director of the Twenty-Sixth Region of the National Labor Relations Board appeals from the partial denial of a temporary injunction issued by the District Court pursuant to section 10(j) of the National Labor Relations Act (the Act) as amended, 29 U.S.C. § 160(j) (1982), pending the NLRB's determination of the charges of unfair labor practices. The District Court granted the Director's request for a cease and desist order enjoining further unfair labor practices but denied any affirmative relief against respondent-appellee Nixon Detroit Diesel, Inc. The Director argues that the District Court abused its discretion by failing to hold affirmative relief to be "just and proper." Because we find that the reason given by the District Court in denying the requested affirmative injunctive relief was improper we reverse the partial denial of the injunctive relief and remand for the District Court to make definitive findings as to why petitioner's requested affirmative relief pending the outcome of the Board's determinations is or is not just and proper.

Nixon Detroit Diesel, Inc. (NDD) reclaims, refurbishes and sells bus and free standing diesel engines and parts in Tennessee and Arkansas. NDD has business locations in five cities with its principal location in Nashville. In late 1985 or early 1986 NDD expanded its service to include repair and maintenance on custom buses. This expansion was organized in September 1986, Joint Appendix (JA) at 112, 116, in the form of a joint venture called Nixon Custom Coach Plaza (NCCP) with the Custom Coach Corporation to be located several miles from NDD's Nashville location. Because of a delay in construction of the

new building for NCCP a section of one building at NDD's Nashville location was modified and used for NCCP work for approximately five months. The separate location for NCCP was opened in February 1987. Custom Coach later withdrew from the joint venture.

Shortly after NDD established NCCP the International Union, the United Automobile, Aerospace & Agricultural Implement Workers of America, UAW (the Union) filed with the Board a petition for a representative election among all NDD's production and maintenance employees. The Union won the election and was certified as the collective bargaining representative of the approximately 140 unit employees on January 14, 1987. In early February the operations of NCCP were relocated to the new facility four or five miles from NDD's location in Nashville. At the first bargaining session between NDD and the Union, on February 16, 1987, a dispute arose over whether the NCCP employees were part of the bargaining unit. On September 25, 1987 after several more unsuccessful meetings the Union filed the first in a series of unfair labor practice charges that would continue through January 8, 1988 alleging that NDD was violating sections 8(a)(1), (3), and (5) of the Act (29 U.S.C. §§ 158(a)(1), (3), and (5)). The Union commenced a strike against NDD on September 30, 1987 which lasted until November 11, 1987. After notifying the Union that it believed the strike activity to be economic, NDD hired permanent replacements for the strikers placing those persons permanently replaced on a preferential rehire list.

On November 4, 1987, the Director issued an initial complaint alleging that NDD had violated section 8(a)(1), (3), and (5) of the Act in part by excluding the NCCP employees from the bargaining unit and causing or prolonging the strike through unfair labor practices. JA at 30. On February 9, 1988 the Director filed a petition for temporary injunctive relief with the United States District Court for the Middle District of Tennessee. In addition to an order requiring NDD to cease and desist from engaging in the unfair labor practices pending final Board disposition, the petition sought an order directing NDD affirmatively to:

(1) offer interim reinstatement to all unfair labor practice strikers and to certain other named employees; (2) rescind unlawfully changed terms and conditions of employment, and recall from layoff those employees disqualified from recall thereby; (3) rescind and expunge any references to certain unlawfully motivated disciplinary warnings; . . . (5) recognize and bargain in good faith with the Union as the representative of all the employees in the certified collective bargaining unit; (6) furnish the Union with certain information relevant to bargaining; . . . .

Brief of Appellant at 3–4.

The matter was submitted on affidavits and documentary evidence and on testimony given at an evidentiary hearing held on February 18, 1988. The District Court issued a Memorandum Opinion finding reasonable cause to believe NDD had violated section 8(a)(1), (3), and (5) of the Act and an Order enjoining NDD from engaging in acts of coercion or discrimination and refusal to bargain until the March 28th hearing before the Board. The District Court, however, refused to grant any of the affirmative relief sought by the Director.

On appeal the parties essentially argue whether the District Court abused its discretion in applying the "just and proper" standard from section 10(j) in denying the Director's request for affirmative relief.

## Injunctive Relief under Section 10(j)

At the outset we note that section 10(j) proceedings are merely ancillary to unfair labor practice proceedings to be conducted before the Board. *Gottfried v. Frankel*, 818 F.2d 485, 492 (6th Cir.1987). The district courts in their analysis under 10(j) are *not* to adjudicate the merits of the unfair labor practice case. The question of whether a violation of the Act has been committed is a function reserved exclusively to the Board, subject to appellate court review of final Board orders. *Levine v. C & W Mining, Inc.*, 610 F.2d 432, 435 (6th Cir.1979). Section 10(j) reflects Congress'

view that interim injunctive relief to restore and preserve the status quo, pending final Board adjudication, may be required to avoid frustration of the basic remedial purposes of the Act and possible harm to the public interest. *See C & W Mining,* 610 F.2d at 436–37 (quoting S.Rep. No. 105, 80th Cong., 1st Sess., 27 (1947), reprinted in I Legislative History of the Labor Management Relations Act 1947, 433 (1948)). Thus under section 10(j) the Board may petition an appropriate district court for "appropriate temporary relief or restraining order," upon the issuance of a complaint alleging the commission of any unfair labor practice; accordingly, the district courts have jurisdiction to grant "such temporary relief or restraining order as [the court] deems just and proper." 29 U.S.C. § 160(j) (1982).

■ Before the district court may issue a temporary injunction under section 10(j), the court must make two findings. First, the court must find "reasonable cause" to believe that the unfair labor practices alleged have occurred. *C & W Mining,* 610 F.2d at 435. Second, if the district court finds reasonable cause to believe the Board's allegations, the court must then determine whether injunctive relief is "just and proper." *Id.* If the district court answers in the negative to either of these inquiries then the petition must be denied. The district court's analysis and our review of each of these steps is a separate inquiry with differing standards.

### A. REASONABLE CAUSE

To establish "reasonable cause" the Director must simply produce some evidence in support of the petition to satisfy the "relatively insubstantial" burden in section 10(j) cases. *Frankel,* 818 F.2d at 493. *See*

*Hirsch v. Building & Constr. Trades Council,* 530 F.2d 298, 302 (3d Cir.1976).[1] The Director need not prove a violation of the Act, in fact he "need not convince the court of the validity of the Board's theory of liability, as long as the theory is substantial and not frivolous." *Frankel,* 818 F.2d at 493. It follows from this that the district court need not concern itself with resolving conflicting evidence if facts exist which could support the Board's theory of liability. *Accord Frankel,* 818 F.2d at 494 (conflicting evidence no detraction to determination of reasonable cause).

Our review of the District Court's finding that "reasonable cause" exists is really a review of a mixed question of law and fact. The District Court's reasonable cause analysis consists of two parts. The first—whether the Director's legal theory is substantial—is essentially a question of law. The second—whether the facts as found satisfy that theory—is largely a factual question. *See Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1085 (3d Cir. 1984). Thus, if we feel the District Court erred in its determination of the substantiality of the Director's legal theory then we may reverse the reasonable cause finding of the District Court. However, in reviewing whether the District Court erred in finding the facts and whether those facts satisfy the Director's theory we may only reverse if such fact-finding was clearly erroneous. *See Kobell,* 731 F.2d at 1086.[2]

■ Although disputing the facts underlying the District Court's determination, NDD does not on appeal seriously challenge the District Court's holding that reasonable cause exists in this case. NDD's brief simply demonstrates that a conflict in the evidence exists—not that there was an

---

1. The "relatively insubstantial" language in *Frankel* comes from *Hirsch.* Although *Hirsch* is a section 10(*l*) case, we see no need to treat 10(*l*) cases differently than 10(j) in the "reasonable cause" analysis. *See Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1084 (3d Cir.1984).

2. Although the Director argues that the District Court's "reasonable cause" determination should be overturned only if "clearly erroneous," citing *Sheeran v. American Commercial Lines,* 683 F.2d 970, 976 (6th Cir.1982) and *C &*

*W Mining,* 610 F.2d at 435, we note that "Congress' purpose in vesting a variety of 'discretionary' powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the 'fashion[ing] [of] the most complete relief possible.'" *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (citation omitted; brackets in original).

absence of either a substantial legal theory or sufficient facts alleged to support that theory. Both the legal theories alleged by the Board, *see, e.g., NLRB v. Flex Plastics, Inc.,* 726 F.2d 272, 276 (6th Cir.1984); *Crestline Memorial Hosp. Assn., Inc. v. NLRB,* 668 F.2d 243, 247 (6th Cir.1982); *Larand Leisurelies, Inc. v. NLRB,* 523 F.2d 814, 820 (6th Cir.1975), and the factual findings of the District Court, *see* JA at 75–78, support the District Court's holding that reasonable cause existed to believe a violation of the Act had occurred. We conclude that the Director met his burden in the case at bar and that the reasonable cause finding has support in law and is not clearly erroneous in fact.

## B.  JUST AND PROPER

After the district court has determined that there is reasonable cause to believe an unfair labor practice has occurred the court must examine whether injunctive relief in the case before it would be "just and proper." Congress granted the district courts power to issue 10(j) injunctions because in some cases the enforcement of a Board order after the Board's normal processes is ineffective to undo the effects of unfair labor practices. *See Gottfried v. Mayco Plastics, Inc.,* 472 F.Supp. 1161 (E.D.Mich. 1979), *aff'd mem.,* 615 F.2d 1360 (6th Cir. 1980). In this regard, the district court must determine "that it is in the public interest to grant the injunction, so as to effectuate the policies of the National Labor Relations Act or to fulfill the remedial function of the Board." *Eisenberg v. Lenape Prods., Inc.,* 781 F.2d 999, 1003 (3d Cir.1986). The district court, however, must be careful that the relief granted is

not simply functioning as a substitute for the exercise of the Board's power. *Frankel,* 818 F.2d at 494. The primary purpose of section 10(j) was "to give the Board a means of preserving the status quo pending the completion of its regular procedures."[3] *Id.,* (quoting *C & W Mining,* 610 F.2d at 436). Accordingly, the district court must inquire whether the relief is necessary to preserve the remedial power of the Board and is just and proper "in the sense of being in 'the public interest' that an injunction issue here pending the NLRB's resolution of the underlying unfair labor practice controversy."[4] *Kobell,* 731 F.2d at 1096 (Aldisert, J., concurring).

The inquiry whether injunctive relief is "just and proper" is committed to the discretion of the trial judge. *Frankel,* 818 F.2d at 494. Our inquiry, therefore, is to determine whether the District Court's refusal to issue the injunction under section 10(j) constitutes an abuse of that discretion. *Id.;* American Commercial Lines, 683 F.2d at 970. The district court abuses its discretion only when it relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard. *See Brandeis Machinery & Supply Corp. v. Barber-Greene Co.,* 503 F.2d 503, 505 (6th Cir.1974). *See also Martin v. Weaver,* 666 F.2d 1013, 1020 (6th Cir.1981).

Notwithstanding the above standard, we find that the District Judge did indeed abuse his discretion by failing adequately to elaborate upon the reasons for his refusal to grant the requested affirmative relief. He did not discuss nor explicitly determine whether the failure to grant the affirmative relief was likely to prevent

---

**3.** The status quo referred to in *Frankel* is that which existed *before* the charged unfair labor practices took place—the status quo after such practices "is undeserving of protection." *Mayco Plastics, Inc.,* 472 F.Supp. at 1166. Although the Director here requested the District Court to order affirmative relief which would require NDD to discharge present employees and rehire former ones, prior to any finding of an unfair labor practice, such an action, if appropriate, would be necessary to preserve the pre-violation status quo. Congress has authorized relief under section 10(j) upon a showing that such relief

is "just and proper" and not upon a more stringent requirement such as irreparable harm.

**4.** We recognize that a premise underlying section 10(j) may be the understanding that 10(j)'s use is reserved for the extraordinary cases where the likelihood of ultimate remedial failure by the Board in *this* case is unusual when compared to every *other* case before the Board. *See Kobell,* 731 F.2d at 1091 n. 26. We question, however, whether this implicit premise is actually present given Congress' use of the less than stringent "just and proper" standard.

the Board from proper and complete exercise of its remedial powers. Although the District Court's factual findings are not clearly erroneous, these findings do not substantially relate to the conclusion reached—the impropriety of affirmative relief. *See Kobell,* 731 F.2d at 1092.

After setting out a number of examples of NDD's conduct which might constitute violations of the Act and finding reasonable cause to believe that NDD had engaged in unfair labor practices, the District Court denied the Director's request for affirmative relief apparently based solely upon the "immediacy" of the hearing date before the Board. This, in and of itself, is not a sufficient ground upon which to base a denial of affirmative relief after the District Court had found reasonable cause to believe NDD violated the Act.

We, therefore, reverse the order below insofar as it limited the relief sought by the Director and remand for the District Court to specifically enumerate its reasons for finding reinstatement injunctive relief to be or not be just and proper in light of the District Court's finding that reasonable cause did exist for the Director to seek relief under section 10(j) of the Act. On remand, if the District Court determines injunctive relief is just and proper, it should issue a temporary injunction granting the relief sought by the Director in his petition[5] pending resolution of the Board proceedings. In all events the present injunction should be amended to extend to the termination of Board proceedings.

---

**5.** The trial judge should also resolve any questions concerning the possible supervisory status of several employees included on NDD's list of unit employees. *See* JA at 246–47.