**Stephen M. GLASSER, a Regional Director of the Seventh Region of the National Labor Relations Board for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**HEARTLAND HEALTH CARE CENTER, d/b/a Plymouth Court, Respondent.**

**No. Civ.A. 03–CV–73426.**

United States District Court, E.D. Michigan, Southern Division.

Nov. 13, 2003.

Roger C. Bauer, Alpena, MI, for Plaintiff.

## MEMORANDUM OPINION & ORDER GRANTING PETITION FOR PRELIMINARY INJUNCTION

HOOD, United States Magistrate Judge.

### I. *Introduction*

This matter is before the Court on Petitioner's request for an injunction pursuant to § 10(j)[1] of the National Labor Relations trict court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the

---

**1.** j) Injunctions

The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States dis-

Act (NLRA), as amended [61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(j)]. Petitioner is Regional Director of the Seventh Region of the National Labor Relations Board and is acting for and on behalf of the National Labor Relations Board relative to Local 79 and Services Employees International Union, AFL–CIO. Respondent is a corporation engaged in the business of operating a nursing home facility, and in doing so derived gross revenues exceeding $100,000.00 during the calendar year ending December 31, 2002 and purchased goods and materials valued in excess of $5,000.00 outside the state of Michigan within the same calendar year.

Petitioner is seeking preliminary injunctive relief pending the final disposition of a related underlying case presently before Administrative Law Judge Karl Buschmann. *(Transcript of National Labor Relations Board Proceedings, dated, 8/27/03).* Specifically, Petitioner is asking the Court to: (1) compel Respondent to recognize and abide by the terms of the collective bargaining agreement that was put in place for the term July 8, 2002 through July 8, 2005; and (2) compel Respondent to bargain with the Local 79 Service Employees International Union, AFL–CIO as the exclusive collective bargaining representative of the union employees.

Respondent asserts that there is no contract for the term July 8, 2002 through July 8, 2005 in place because the subject agreement was not accepted on its terms, and therefore, the agreement never became an enforceable binding contract. As a result of the non-existence of a binding contract, Respondent did not violate § 8(a)(1) or § 8(a)(5)[2] of the National Labor Relations Act (NLRA) and an injunction ordering Respondent to recognize a non-existent collective bargaining agreement under § 10(j) would be inappropriate.

## II. *Statement of Facts*

Local 79 and Services Employees International Union, AFL–CIO (Union) have had an exclusive collective bargaining agreement with Respondent since 1985. These agreements are embodied in a series of successive agreements. The agreement at issue in this matter is one that was to be effective from July 8, 2002 until July 8, 2005 *(General Counsel Exhibit 3).* Negotiations began relative to finalizing a contract for the above referenced period in October 2002. On December 19, 2002, Respondent and the Union entered into a tentative contract agreement. *(Joint Exhibit 1).* On December 27, 2002, the Union membership ratified the tentative contract agreement. *(Hearing Transcript, dated 8/27/03, pp. 50–52, 67).* On February 6, 2003, the Union received from Respondent executed final copies of the contract. *(Joint Exhibits 5–6, Hearing Transcript, dated 8/27/03, pg. 74; 50–52, 67).* In late February, upon review of the contract again before signing, Petitioner alleges that union officials noticed that there was a "problem" with Article 11, Section 9 regarding vacations. *(Hearing*

---

court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper. *§ 10(j), 29 U.S.C. § 160(j)*

**2.** (a) Unfair labor practices by employer
It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

\* \* \* \* \* \*

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title. *§ 8(a)(1) & § 8(a)(5), 29 U.S.C.A. § 158*

*Transcript, dated 8/27/03, pp. 148–49).* As a result, a phone call was placed to and a message was left for a representative of Respondent, Linda Tille (Human Resource Manager) which was recorded:

Hi, Ms. Tille, this is Mary Nelson from Local 79. My number is 313–965–9450, extension 128. I have a problem. Everything is OK, except Article 11, Vacations, Section 9. It says: "No. vacations shall be taken between December 20th and January 5th, except employees with over ten (10) years of seniority, who will be allowed to take vacation time between Christmas and New Year's Day holidays. Employees with five (5) to ten (10) years of service will be eligible to take vacation during this period of time. The Employer reserves the right to approve vacation requests during this period of time, based on the needs of the residents." Could you please give me a call? I think, one, Section 9, the ten years is supposed to be put out and then the five to ten years of service is supposed to be put in. Could you give me a call so we could straighten this out so we can get this signed because I got the bargaining unit member down here today so we can have it signed, sealed and delivered?

*(General Counsel Exhibit 6).*

After leaving this message, it became apparent to Union representatives that Article 11, Section 9 was mis-read and/or mis-interpreted and that the alleged missing language was actually within the text of the agreement, but on the next page. With that discrepancy resolved, the designated individuals of the Union membership executed the contract on February 23, 2003. A couple of days after the union membership executed the contract, Ms. Tille returned Mary Nelson's phone call and told her that she (Ms. Tille) would look into the concerns expressed by Mary Nelson in her telephone message. *(Hearing Transcript, dated 8/27/03, pp. 79, 118).* Mary Nelson, nor any other individual from the Union membership contacted Ms. Tille to inform her that the contract was correct as written and that Article 11, Section 9 was simply misinterpreted. *(Hearing Transcript, dated 8/27/03, pp. 79–80, 118).*

Respondent asserts that on February 28, 2003, a letter was sent to the Union membership informing them that the Article 11, Section 9 matter would be further researched. *(Respondent Exhibit 7).* Again, the Union membership did not respond to this correspondence, as they were making copies of the executed drafts of the agreement and beginning preparations to deliver copies of the signed contract to Respondent and the other Unit members. *(Hearing Transcript, dated 8/27/03, pp. 80, 84).*

On March 3, 2003, Respondent received a Petition which contained 31 signatures of employees who expressed their desire to no longer be represented by the Union. *(Joint Exhibit 8).* The bargaining unit consists of 62 employees,[3] *(Petition-*

---

**3.** At oral argument, Respondent argued that there were 61 employee members of the Union as opposed to 62 in an effort to support its position that a majority of the membership chose no longer be a part of the Union. Respondent argued that with only a minority membership remaining, choosing to withdraw its recognition of the Union as the exclusive bargaining representative of the Unit employees was not improper. Petitioner argued that whether the membership consisted of 61 or 62 members is of no moment relative to the issues presently before this Court. "Once the parties have formed a valid collective bargaining agreement, an employer may not withdraw recognition during the term of that agreement based on an alleged good faith doubt of the union's majority status." *(Memorandum in Support of Petition for Injunction,*

er's *Memorandum in Support of Petition for Injunction, pg. 8; General Counsel Exhibit 2).* "That same day, Respondent sent a letter to the Union withdrawing recognition of the Union" and further stating that there was no "meeting of the minds" relative to the contract at issue due to the phone call from Mary Nelson regarding Article 11, Section 9. *(Petitioner's Memorandum in Support of Petition for Injunction, pg. 8; Joint Exhibit 7).* Respondent argues that Mary Nelson's phone call constituted a counter-offer and therefore the existing contract was no longer valid. Additionally, since there was no further communication from the Union after the phone call, it was not incumbent upon Respondent to assume that the contract was still valid knowing that the Union had an issue about Article 11, Section 9,

On March 11, 2003, Respondent informed the Union that there was no longer a union representing employees employed by Respondent and that the Union was no longer allowed on the premises. *(Hearing Transcript, dated 8/27/03, pg. 85).* A copy of the executed contract was left at Respondent's facility on the same day (March 11, 2003).

As a result of Respondent's actions, Petitioner filed a charge before the National Labor Relations Board on May 21, 2003; an administrative hearing followed on August 27, 2003. Pending a ruling by Administrative Law Judge Buschmann, Petitioner is asking this Court to issue an injunction ordering Respondent to recognize the Union as its exclusive collective bargaining representative of the employee Unit and to abide by the terms of the July 8, 2002—July 8, 2005 contract that all parties signed in this matter.

*pg. 13); Auciello Iron Workers, Inc.* 317 NLRB

### III. Standard of Review

 Proceedings pursuant to § 10(j) are subordinate to the unfair labor practice proceedings to be heard before the Board. *Fleischut v. Nixon Detroit Diesel,* Inc., 859 F.2d 26, 28 (6th Cir.1988). "The district courts in their analysis under 10(j) are not to adjudicate the merits of the unfair labor practice case." *Id.* To issue a § 10(j) injunction, the district court first must find that there is "reasonable cause" to believe that the Respondent has committed unfair labor practices. *Id.* at 29, Second, if reasonable cause exists, the Court must determine whether injunctive relief is "just and proper." *Id.* An injunction may be granted only if both of these steps are met.

### A. Reasonable Cause

 Petitioner's burden of establishing reasonable cause is "relatively insubstantial." *Id.* Petitioner need not prove a violation of the NLRA nor even convince this Court of the validity of the Petitioner's theory of liability; instead, he need only show that the Board's legal "theory is substantial and not frivolous." *Id.* (*quoting, Gottfried v. Frankel,* 818 F.2d 485, 493 (6th Cir.1987)). Whether the Board's legal theory is substantial is a question of law. *Kobell v. United Paperworkers Int'l Union,* 965 F.2d 1401, 1406–07 (6th Cir.1992). Petitioner must also show that the facts of this case are consistent with the Board's legal theory. *Fleischut,* 859 F.2d at 29. Whether the facts are consistent with and satisfy the Board's legal theory is a question of fact. *Kobell,* 965 F.2d at 1407.

### B. Just and Proper

 This circuit has explained that Congress allowed for "[§ ] 10(j) injunctions because in some cases the enforcement of a Board order after the Board's

364, 368, 1995 WL 291061 (1995).

normal processes is ineffective to undo the effects of unfair labor practices." *Fleischut*, 859 F.2d at 30. This Court must determine whether "it is in the public interest to grant the injunction, so as to effectuate the policies of the National Labor Relations Act or to fulfill the remedial function of the Board." *Id.* (*quoting Eisenberg v. Lenape Prods., Inc.*, 781 F.2d 999, 1003 (3rd Cir.1986)). The goal of a § 10(j) injunction is to preserve the status quo pending completion of the Board's unfair labor practice proceedings. *Fleischut*, 859 F.2d at 30.

## IV. *Applicable Law & Analysis*

### A. Reasonable Cause

#### 1. *Mary Nelson's Alleged Counter–Offer*

■ The crux of this case hinges upon the issue of whether Petitioner had reasonable cause to believe that it had a binding and enforceable contract with Respondent. The answer to that question is premised upon whether Petitioner had reasonable cause to believe that Mary Nelson's voice mail message *did not* constitute a counter-offer and therefore a rejection of the July 8, 2002—July 8, 2005 collective bargaining agreement. If the Court finds that Petitioner's actions in bringing this Petition for § 10(j) relief is reasonable, then the Court must decide if granting injunctive relief is just and proper in this case.

■ "A reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." *Restatement (Second) of Contracts § 59 (1979)*. In other words, an "[a]cceptance conditioned on the modification of terms in an offer generally constitutes a rejection of the offer and becomes a counter-offer that the original offeror must accept before a valid contract

is established." *Sharp Electronics Corp. v. Deutsche Financial Services Corp.*, 216 F.3d 388, 395 (4th Cir.2000). The portion of Mary Nelson's voice mail message which Respondent argues constitutes the counter-offer is as follows:

I think, one, Section 9, the ten years is supposed to be put out and then the five to ten years of service is supposed to be put in. Could you give me a call so we could straighten this out so we can get this signed because I got the bargaining unit member down here today so we can have it signed, sealed and delivered? *(General Counsel Exhibit 6)*.

Petitioner argues that a reading of this language reasonably indicates that Mary Nelson believed there was an error in the final draft of the contract or a transposition or misplacement of numbers relative to the number of years necessary to work in order to be eligible for vacation time during the Christmas holidays. Respondent characterizes this language as an "objection" by Mary Nelson to the vacation provisions and that the contract "could not be signed" unless the stated change was made. *(Respondent's Memorandum and Points of Law and Authorities In Opposition to Petition for Injunction, pg. 3)*. The Court will not make a finding regarding whether this language constitutes a counter-offer as that is not for the Court to determine for these proceedings. However, based upon the definition of a counter-offer as defined by the Restatement of Contracts and case law, the Court finds that Petitioner had reasonable cause to believe that the July 8 2002 through July 8, 2005 collective bargaining agreement was a valid and binding contract.

Just as Respondent interprets the language to constitute an "objection," or a desire to modify the terms of the contract, the Court finds that it is just as reasonable for the language to be interpreted as a

query relative to the terms of the vacation provisions. Respondent construes the language to mean that the Union will not sign or accept the contract until the terms are modified to reflect Mary Nelson's understanding of what the vacation provisions were to entail, but it is just as reasonable an interpretation that the signatures were present at the time of the phone call and Ms. Nelson wanted any perceived discrepancies resolved before it was signed. The Court finds that it was reasonable for Mary Nelson to believe that her phone call did not demand or request a change or modification of the terms of the collective bargaining agreement. The Court further finds that Mary Nelson had reasonable cause to believe that she was not issuing Respondent an ultimatum about the collective bargaining agreement. Therefore, Petitioner has reasonable cause to initiate these proceedings because the his legal theory regarding the non-existence of a counter-offer in this case is "substantial" and not "frivolous."

### 2. Other Substantial & Non–Frivolous Basis' Supporting Reasonable Cause

■ The Court found other "substantial and non-frivolous" bases to support reasonable cause. First, on December 19, 2002, the parties entered into a valid tentative agreement which was subsequently ratified on December 27, 2002. The ratification of a tentative agreement constitutes the creation of a binding contract. *Sierra Publishing Company v. Central Valley Typographical Union # 46*, 1989 WL 224303, 296 NLRB 477, 482 (1989); *State County Employees AFSCME District Council 71 v. Golden Crest*, 1985 WL 45633, 275 NLRB 49 (1985) (ratification by union members creates a "binding" agreement); *Carpenters Local 1476 v. Lake Charles District, Associated General*, 1984 WL 36552, 270 NLRB 1432 (1984) (tenta-

tive contract agreements mature into final binding contracts only upon ratification by the union membership). The fact that the tentative agreement was ratified provides a reasonable cause basis to believe the parties had a binding contract and Respondent breached the contract by withdrawing its recognition on March 3, 2003.

Second, on or about February 6, 2003, Respondent representatives signed the ratified tentative agreement; and on February 23, 2003, the Union membership executed the agreement. The fact that this ratified agreement was subsequently signed by both parties establishes a reasonable cause basis to believe that the contract was valid and that Respondent's withdrawal of recognition constituted a breach, thus entitling Petitioner to relief. *Appalachian Shale Products Company*, 1958 WL 13562, 121 NLRB 1160 (1958).

Finally, it is asserted in Petitioner's brief and was argued at the hearing in this matter that portions of the ratified tentative agreement were implemented prior to either party signing the final draft of the agreement. Respondent does not dispute the facts as set forth by Petitioner. A ratification bonus was paid; and the required pay raise as set forth in the contract went into effect on January 8, 2003. Therefore, subsequent to the ratification of the tentative agreement, the parties were acting as though they were operating under a binding contractual agreement. The actions of the parties provide reasonable cause for Petitioner to believe that the contract was binding and that Respondent is in breach, necessitating this request for injunctive relief. *In re City Metals Co., Inc.* 181 B.R. 398 400 (1995) (performance under a ratified agreement demonstrates the binding effect of the contract).

As a result of these circumstances, the Court finds that the basis upon which Peti-

tioner brings this petition for injunctive relief is substantial and not frivolous.

## B. Just & Proper

■■■ Based upon the foregoing and the anticipated irreparable harm described below, this Court is of the opinion that equitable relief would be 'just and proper' under the circumstances disclosed by the instant dispute. While issuance of a preliminary injunction pursuant to Section 10(j) of the Act, 29 U.S.C. S 160(j), is the grant of an extraordinary remedy, such relief is appropriate here since Petitioner has satisfied the Court that an injunction is necessary in order to restore or preserve the status quo or to prevent irreparable harm. *See, Greene for and on Behalf of N.L.R.B. v. Mr. Wicke Limited Co.*, 270 F.Supp. 1012, 1016 (D.C.Conn. 1967). Petitioner seeks an order compelling Respondent to recognize and abide by the terms of the collective bargaining agreement that was put in place for the term July 8, 2002 through July 8, 2005; and (2) compelling Respondent to bargain with the Local 79 Service Employees International Union, AFL–CIO as the exclusive collective bargaining representative of the union employees.

Petitioner has quite properly requested that the status quo be restored so that the underlying issues may be preserved for orderly determination by the National Labor Relations Board, and interim and irreparable injury to the employees' interests may be avoided (withdrawal of recognition would cause erosion of support from the union; cause impotence of the union; make it difficult to enforce union rules and regulations; make it difficult to preserve the collective bargaining process.) *Bloedorn v. Francisco Foods*, 276 F.3d 270, 298–99 (7th Cir.2001); *Moore-Duncan v. Horizon House Developmental Services*, 155 F.Supp.2d 390, 396–97 (E.D.Pa.2001).

The instant petition for a preliminary injunction pending determination of the unfair labor practice charges by the Board is therefore granted.

## C. Respondent's Supplemental Filing

On October 9, 2003, Respondent sent via facsimile to the Court's chambers a supplement to its oral argument in the form of two cases and a cover letter providing a very brief synopsis of each case. These cases allegedly support Respondent's arguments raised at the hearing regarding rescission of collective bargaining agreements and the use of escrow accounts to hold union employee funds. On October 10, 2003, Petitioner filed an Emergency Motion to Strike Respondent's Supplement to Oral Argument and its Attachments. Petitioner asserts that the service of the pleading was improper; the filing of a supplemental writing goes against this Court's briefing schedule; and Petitioner did not request permission to make such a filing. The Court agrees with Petitioner.

Respondent did not request at oral argument to file supplemental pleadings could be made in support of its position, as required by Local Rule 7.1(f). The Court nor Petitioner consented to be served via facsimile, but nonetheless service was made in that fashion in violation of Fed. R.Civ.P. 5(D). Finally, the Notice of Hearing Scheduling Order did not allow for any additional filings relative to Petitioner's request for injunctive relief past September 30, 2003. Accordingly, Respondent's supplemental filing is stricken from the record.

## V. *Conclusion*

Based on this Court's finding that Petitioner has established a substantial, non-

frivolous basis for initiating these proceedings and that the status quo should be preserved pending the Board's final disposition of the underlying case,

IT IS HEREBY ORDERED that Petitioner's Petition for Preliminary Injunction Under Section 10(J) of the National Labor Relations Act, As Amended, [Docket No: 1–1, filed September 23, 2003] is **GRANTED**.

IT IS FURTHER ORDERED that Respondent be restrained from failing to recognize and bargain with the Local 79 Service Employee International Union AFL–CIO, as the exclusive collective bargaining representative of the employees.

IT IS FURTHER ORDERED that Respondent abide by the terms of the collective bargaining agreement effective July 8, 2002 through July 8, 2005.

IT IS FURTHER ORDERED that Petitioner's Emergency Motion to Strike Respondent's Supplement to Oral Argument and its Attachments (Docket No: 10–1, filed October 10, 2003) is GRANTED.

