Joseph A. SZABO, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Appellee,

v.

P\*I\*E NATIONWIDE, INC., Appellant.

No. 88–3061.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1989.

Decided June 23, 1989.

---

Ellen Farrell, Washington, D.C., for appellee.

John F. Dickinson, Corbin & Dickinson, Jacksonville, Fla., for appellant.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and WILL, Senior District Judge.*

BAUER, Chief Judge.

On behalf of the National Labor Relations Board (the "NLRB"), Joseph Szabo, Regional Director of Region 30 of the NLRB, filed a petition in district court seeking an injunction against P*I*E Nationwide, Inc. ("PIE") pursuant to Section 10(j) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 160(j). Szabo sought a temporary injunction against PIE pending final disposition by the NLRB of unfair labor practice charges filed by Patrick Clement against PIE. The district court granted the NLRB's petition, ordered Clement's reinstatement, and enjoined PIE from engaging in any future conduct "like or related" to that alleged in Clement's charges. PIE now appeals from the district court's order granting the NLRB's petition. For the following reasons, we reverse the order of the district court.

## I.

PIE is an interstate trucking company with freight terminals located throughout the country, including Franklin, Wisconsin and Chicago, Illinois. In December, 1987, PIE transferred its bulk break facility from Danville, Illinois to Chicago, Illinois. (A bulk break facility is a major distribution center. This kind of terminal receives freight from satellite facilities, reloads it, and then ships it to its final destination.) This change of operations was unpopular with the truck drivers who operated out of Franklin terminal. It dramatically increased the number of runs required between Franklin and Chicago, which was a short, difficult run, and eliminated many of the more profitable, longer runs. Furthermore, this short run enabled PIE to dispatch a Franklin driver on three trips between Franklin and Chicago without exceeding the maximum hours allowed under the Department of Transportation's safety regulations. Before the relocation of the bulk break facility to Chicago, very few third trips were required of Franklin drivers.

Patrick Clement was employed at PIE's Franklin terminal as a truck driver. This is the second time that PIE has fired Clement. The first discharge occurred after PIE discovered that Clement had filed an unfair labor practice charge against a for-

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

mer employer. After being fired, Clement filed a complaint against PIE with the NLRB and the NLRB ordered PIE to reinstate Clement and pay him for lost wages. (There was a further dispute between Clement and PIE over the amount of back pay to which Clement was entitled.)

Clement's most recent termination arises out of a dispute over PIE's third run policy on trips between Franklin and Chicago. On June 18, 1988, Clement returned to the Franklin terminal after completing a round trip run between Franklin and Chicago. The Franklin dispatcher, Larry Scarbrough, told Clement that he had to make another run to Chicago. Clement refused. Scarbrough then issued two disciplinary warnings. Clement still refused to accept the dispatch to Chicago and Scarbrough fired him.

Clement then filed another set of charges with the NLRB against PIE, alleging that PIE had engaged in unfair labor practices in violation of 29 U.S.C. §§ 158(a)(1), 158(a)(3) and 158(a)(4). Clement claimed that after a previous dispute with another driver over the third run policy, PIE and Teamsters "General" Local Union No. 200 reached an agreement under which a driver has the right to refuse a third trip for any reason at all. PIE responded that a driver has the right to refuse a trip only if he is too tired to drive. Clement also claimed that he was discharged in retaliation for filing an earlier grievance with the NLRB against PIE, and that Scarbrough had it in for him because Scarbrough testified at Clement's back pay hearing and was later the subject of ridicule around the terminal based upon that testimony. In response, PIE contended that Clement was fired in accordance with its previous policies and the collective bargaining rules established between it and the union.

After Clement filed his complaint, the NLRB filed a petition for a section 10(j) injunction in district court. The district court granted the petition. This is PIE's appeal.

## II.

■ Upon a showing by the NLRB that there is reasonable cause to believe that the employer has engaged in an unfair labor practice and that it would be "just and proper" to do so, the district court may enter an injunction, in the form of temporary relief or a restraining order, against the employer. *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 744 (7th Cir.1976). The reasonable cause prong of this two part test is a relatively easy burden to meet: the evidence, when viewed in a manner favorable to the NLRB, need only establish that the NLRB's theories of law and fact are not frivolous or insubstantial. *Squillacote v. Graphic Arts Int'l Union*, 540 F.2d 853, 858 (7th Cir.1976); *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1083–84 (3rd Cir.1984). The issue of reasonable cause, however, is not before us because PIE does not appeal the district court's finding on this issue. Rather, PIE argues on appeal that the district court abused its discretion in finding that it was "just and proper" to order injunctive relief under the circumstances of this case.

■ We agree. Section 10(j) relief is an "extraordinary remedy." *See, e.g., Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1192 (5th Cir.1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). It should be granted only in those situations in which the effective enforcement of the NLRA is threatened by the delays inherent in the NLRB dispute resolution process. Specifically, Congress enacted section 10(j) as part of the Taft–Hartley amendments of 1947 to remedy the following type of situation:

Experience under the National Labor Relations Act has demonstrated by reason of lengthy hearing and litigation enforcing its order, the Board has not been able in some instances to correct unfair labor practices until after some substantial injury has been done.... [I]t has sometimes been possible for persons violating the Act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or

preserve the status quo pending litigation.

S.Rep. No. 105, 80th Cong., 1st Sess. 8, 27 (1947). Furthermore, Congress explicitly stated that, without allegations of public harm, section 10(j) injunctive relief is not available to "vindicat[e] . . . private rights." *Id.*

Against this background, we have stated that when assessing whether injunctive relief is warranted,

> courts should consider such factors as the need for an injunction to prevent frustration of the basic remedial purpose of the act and the degree to which the public interest is affected by a continuing violation as well as more traditional equitable considerations such as the need to restore the status quo ante or preserve the status quo.

*Squillacote,* 534 F.2d at 744. The NLRB acknowledges the foregoing principles and argues that they are implicated in Clement's situation. It contends that this is more than a simple individual discharge case because PIE terminated Clement in violation of Section 8(a)(4) of the NLRA, 29 U.S.C. § 158(a)(4), which provides that it shall be an unfair labor practice "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter." The NLRB argues as follows: because other PIE employees are aware of Clement's retaliatory discharge claim they will not file grievances with the NLRB because of the fear that they, like Clement, will later be terminated. Even if, upon resolution of the dispute, the NLRB orders Clement's reinstatement, it cannot remedy the interim chill. Those employees who were afraid to file grievances may have lost their right to file because the filing period may have expired in the meantime. In addition, an injunction will promote the public interest because it will send a message to the other PIE employees assuring them that the NLRB has the power to protect them.

Although we agree that section 10(j) relief *may* be warranted when an employee has filed a retaliatory discharge claim, see *Humphrey v. United Credit Bureau of America,* 99 L.R.R.M. (BNA) 3459 (D.Md. 1978), it is not warranted in this case. Had there been allegations that PIE regularly terminated employees who filed grievances with the NLRB or intended to embark upon this kind of behavior in the future, then the chilling effect feared by the NLRB might be at least possible. But in the circumstances of this case, the NLRB's fear is mere speculation at best. *See Eisenberg v. Lenape Products, Inc.,* 781 F.2d 999, 1005 (3d Cir.1986) (Section 10(j) relief is inappropriate where "there is no evidence in the record to establish that other employees will be discouraged from engaging in concerted activity in the interim."). Furthermore, any chilling effect is the result of Clement's actions, not PIE's. The NLRB contends that employee knowledge of this situation makes it significant; however, the reason that the other employees know about this situation is that Clement told them about it. Under the reasoning employed by the NLRB, any employee can guarantee his or her interim reinstatement, a situation which the NLRA contemplates as the exception rather than the rule, by filing a retaliatory discharge claim and telling his or her coworkers about it. Injunctive relief, however, should turn upon the employer's actions, not the employee's words. Again, had there been allegations that PIE created a situation that could chill employee claims against it, then section 10(j) relief might be appropriate.

There is no evidence that PIE's employees are afraid to file grievances with the NLRB and therefore no evidence that there is a public interest at stake here. The decision of the district court is therefore

REVERSED.