Glenn A. ZIPP, Regional Director of the Thirty–Third Region of the National Labor Relations Board, for an on behalf of the National Labor Relations Board, Petitioner,

v.

CATERPILLAR, INC., Respondent.

No. 94–1162.

United States District Court,
C.D. Illinois,
Peoria Division.

July 18, 1994.

Deborah A. Fisher, Peoria, IL, for petitioner.

L. Lee Smith, Peoria, IL, Columbus R. Gangemi, Jr., Chicago, IL, for respondent.

## MEMORANDUM OPINION

MIHM, Chief Judge.

On April 19, 1994, Petitioner Glenn A. Zipp, Regional Director of Region 33 of the National Labor Relations Board, filed a verified Second Amended Petition seeking temporary injunctive relief pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j). Respondent Caterpillar, Inc. answered the Second Amended Petition on

April 20, 1994. By leave of the Court, the International Union of United Automobile, Aerospace and Agricultural Implement Workers of America [UAW] and Local 974 of the UAW filed an amicus brief in support of the Second Amended Petition. Expedited discovery was conducted, and the Court set this case for an evidentiary hearing.

On May 23 through May 25, 1994, an evidentiary hearing was conducted. The parties were afforded a full opportunity to present and argue the evidence and the law. In consideration of the pleadings, the evidence, the arguments, and the submissions of the parties and the amicus, this Court denied Petitioner Zipp's Second Amended Petition for Injunction under § 10(j) of the National Labor Relations Act [Act]. On May 27, 1994, judgment was entered in favor of the Respondent and against the Petitioner.

### Statement of the Facts

Caterpillar is engaged in the manufacture, sale, and distribution of large earthmoving equipment, diesel engines, and related products and services. The UAW and Local 974 [the Union] are the exclusive collective bargaining representatives for Caterpillar's production and maintenance employees in a multi-facility bargaining unit. The UAW represents approximately 8,000 Caterpillar employees in the Peoria, Illinois area through Local 974 and approximately 14,000 Caterpillar employees in other affiliated local unions in Illinois, Colorado, Pennsylvania, and Tennessee.

On November 4, 1991, the collective bargaining agreement between Caterpillar and the Union expired. Since that date, Caterpillar and the Union have been engaged in an open, hostile, and high profile labor dispute concerning the terms and conditions of a successor collective bargaining agreement. In April 1992, Caterpillar and the Union reached an impasse in contract negotiations. Since then, the Union employees have gone on strike and returned to work on multiple occasions. The duration of these strikes has varied from days to months. During times when the UAW employees have not been on strike, they have worked without a contract under terms and conditions implemented by Caterpillar from its final proposed contract offer and certain revisions to that offer that have been subsequently made. This ongoing labor dispute has lasted for approximately three years and remains unresolved. As a result, the Union has filed numerous unfair labor practice charges against Caterpillar since the beginning of this labor dispute.

The unfair labor practice charges underlying this Petition involve George Boze, Jr., a UAW employee of Caterpillar who worked at Caterpillar's Mossville, Illinois facility. Boze was also the Union's Unit 7 Chairman and represented Mossville facility employees on the Local Union Executive Board. In addition, Boze was a member of the Union's Contract Action Team. The Contract Action Team is a committee of people who actively work to encourage other Union members to take a supportive role in working toward a contract.

On September 22, 1993, Boze testified at a National Labor Relations Board [Board] hearing regarding discipline he received in February and April 1993 for wearing a T-shirt bearing the words "Permanently Replace Fites" and other Union buttons. The word "Fites" refers to Caterpillar's chief executive officer. As a result of his participation in the administrative hearing, Boze was away from his work area at the Mossville facility from September 20, through November 1, 1993. On November 1, 1993, Boze returned to work. On November 10, 1993, Boze was indefinitely suspended. On December 2, 1993, Boze was formally discharged from employment at Caterpillar. The facts surrounding his suspension and discharge are vigorously disputed and at the core of three of the charges presently pending before the Board in the underlying case.

This Petition involves three charges filed by the Union with the Board on November 12, 1993, November 19, 1993, and February 4, 1994, against Caterpillar for allegedly engaging in unfair labor practices within the meaning of § 8(a)(1) and (3) of the Act. In the Second Amended Petition, the Petitioner asserts that there is a likelihood that the Regional Director will, in the underlying administrative proceeding in these cases, establish, *inter alia*, that:

A. Charles Haddad, a Caterpillar foreman, on November 1, 1993 and continuing to and including November 10, 1993, harassed George Boze, Jr. and other employees serving as union officials through surveillance and monitoring of their actions.

B. On November 1, through November 10, 1993, Haddad and Jim Slapinski (Caterpillar foreman and Boze's immediate supervisor), imposed desperate restrictions and a gag order on Boze, restricting his movement and talking to other employees in work areas because of union activity and sympathies.

C. On November 4 or 5, 1993, Haddad told other employees that Boze was a troublemaker and directed them to stay away from him and other union officials.

D. On November 4 or 5, 1993, Haddad coercively interrogated employees regarding their and other employee's union activity and told them that he was assigned to get rid of troublemakers and instigators.

E. On November 10, 1993, Haddad made demeaning, provocative, and threatening remarks to Boze because he had engaged in union activity in order to discourage him and other employees from union activity.

F. On October 19, through November 17, 1993, Haddad harassed employees suspected of being union supporters or engaged in union activity by surveiling and monitoring their actions.

G. That on October 19, through November 17, 1993, Haddad threatened employees with discharge and unspecified reprisals because he suspected that they were union supporters and were engaging in union activity.

H. On November 5, 1993, Haddad directed an employee to remove union insignia and union literature he had displayed on his toolbox and threatened to discharge him if he did not remove it.

I. On November 5, 1993, Haddad threatened an employee with unspecified reprisals because he wore a black "UAW" arm band.

J. On November 5, 1993, Haddad, in the context of discussing an employee's union activity, accused the employee of being engaged in industrial sabotage and suggested that he should transfer out of Haddad's work area because he could not be trusted.

K. On January 31, 1994, and on February 7, 1994, Haddad threatened an employee with reprisals if he filed a grievance.

L. On November 10, 1993, Caterpillar indefinitely suspended Boze.

M. On December 2, 1993, Caterpillar discharged Boze.

N. Caterpillar engaged in the above conduct because Boze assisted the union and engaged in concerted activities and to discourage employees from engaging in these activities.

O. Caterpillar engaged in the conduct described above because Boze gave testimony to the Board in the form of affidavits and testified at an unfair practice hearing before the Board in an unrelated case.

P. Caterpillar has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization, in violation of the Act.

Q. Caterpillar has been discriminating against employees for giving testimony under the Act, in violation of the Act.

R. Caterpillar has been interfering with, restraining, or coercing employees in the exercise of rights guaranteed by the Act.

The Petitioner, Glenn A. Zipp, Regional Director of Region 33 of the National Labor Relations Board, asserts that Caterpillar's unfair labor practices described above have and are continuing to irreparably harm employees of Caterpillar in the exercise of their rights guaranteed by the National Labor Relations Act and are continuing to irreparably chill employees in their utilization of, and participation in, Board processes during the ongoing labor dispute between Caterpillar and the Union. The Director asserts that Caterpillar's unfair labor practices have caused the following harm:

A. On November 5, 1993, an employees removed union literature displayed on his toolbox after Caterpillar, by Haddad, threatened him with discharge.

B. In November 1993, employees under the supervision of Haddad declined to wear T-shirts bearing a pro-union slogan out of fear of being fired.

C. In early November 1993, an employee declined to file an unfair labor practice charge with the Board over a one-day suspension given to him by Haddad based upon the employee wearing a black arm band in support of the union, because the employee feared retaliation from Haddad if the employee filed a charge.

D. The employee described just above stopped wearing union buttons after the suspension of Boze because he feared retaliation by Haddad if he wore union buttons.

E. In January 1994, several union officials declined to pursue certain grievances with Caterpillar out of concern for retaliation after Boze was discharged.

F. In February 1994, an employee cancelled several appointments to give evidence to the Regional Office of the Board concerning unfair labor practice charges against Caterpillar because the employee stated that he did not want to be another Boze.

The Director argues that if temporary injunctive relief is not granted immediately to enjoin and restrain the unfair labor practices, Caterpillar will continue to engage in those acts and similar conduct. Therefore, the Director argues that to avoid the injuries as set forth above, and for purposes of effectuating the policies of the Act and avoiding substantial irreparable and immediate injury to such policies, to the public interest, and to the employees involved, Caterpillar should be enjoined and restrained pending final disposition of the matters presently pending before the Board.

The Director prays that Caterpillar be enjoined in the following manner:

A. Cease and desist from harassing employees serving as union officials by surveiling and monitoring their actions;

B. Cease and desist from restricting the movement of employees serving as union officials or directing them not to speak to other employees because of their union activity or sympathies;

C. Cease and desist from telling employees that other employees who serve as union officials are troublemakers and directing these employees to stay away from such employees; .

D. Cease and desist from telling employees that supervisors are assigned to get rid of troublemakers and instigators;

E. Cease and desist from making demeaning, provocative, and threatening remarks to employees because those employees engage in union activity or to discourage employees from engaging in union activities;

F. Cease and desist from indefinitely suspending, discharging, or otherwise discriminating against employees because they assist the union in engaging in concerted protected activities;

G. Cease and desist from indefinitely suspending, discharging, or otherwise discriminating against employees because they give testimony to the Board in the form of affidavits or testify at Board proceedings;

H. Cease and desist from interfering with, restraining, or coercing employees in the course of rights guaranteed by the Act;

I. Reinstate Boze to his former position without prejudice to his former seniority or other rights and privileges, displacing, if necessary, any other persons hired or reassigned as his replacement;

J. Order Caterpillar to post copies of this Court's opinion in Caterpillar's Mossville, Illinois facility at locations where Caterpillar's notice to employees are customarily posted; and

K. Order Caterpillar to file a sworn affidavit from a responsible official setting forth with specificity the matters in which Caterpillar has complied with the terms of this decree.

Before denying this Petition, the Court heard testimony and oral argument from the parties and admitted numerous documents during a three day evidentiary hearing. The following discussion represents this Court's conclusions of law and findings of fact in this matter supporting the decision to deny the

injunctive relief requested by the Director in this case.

*Findings of Fact and Conclusions of Law*

The Petitioner, as Regional Director of the Board, has the authority to petition this Court for the type of injunctive relief requested in this case once the Board has issued a complaint charging Caterpillar with engaging in unfair labor practices. 29 U.S.C. § 160(b) & (j). Section 10(j) of the Act states that:

> Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

■ The only issue for this Court is "whether the Board has demonstrated that relief is 'just and proper' under the approach traditionally applied to equitable cases filed by public agencies." *Kinney v. Pioneer Press*, 881 F.2d 485, 493 (7th Cir.1989). In *Kinney v. International Union of Operating Engineers, Local 150*, 994 F.2d 1271, 1277 (7th Cir.1993), Judge Cummings, discussed the standard set forth in the *Pioneer Press* case and rejected the argument that a more relaxed standard should apply than the traditional test in equity where one of the parties is a public agency. In the *Local 150* case, the Court rejected the more lenient public interest test and its "sliding-scale" adjustment to the elements of the traditional test. *Local 150*, 994 F.2d at 1277. Therefore, this Court "must apply the traditional test in equity to determine whether an injunction would be 'just and proper.'" *Local 150*, 994 F.2d at 1277–78.

In *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992), the Seventh Circuit set forth the legal framework for analyzing preliminary injunctive relief:

> a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. (Citations omitted). If the moving party cannot establish either of these prerequisites, a court's inquiry is

over and the injunction must be denied. If, however, the moving party clears both thresholds, the court must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties. (Citations omitted).

*Abbott Laboratories*, 971 F.2d at 11–12; *see also, Local 150*, 994 F.2d at 1279.

"Failure to establish irreparable injury and probability of success on the merits dooms any request for an injunction." *Pioneer Press*, 881 F.2d at 494.

*Likelihood of Success on the Merits:*

■ As to the reasonable likelihood of success on the merits prong of this analysis, the movant must demonstrate a "better than negligible" chance of prevailing. *Local 150*, 994 F.2d at 1278; *see also, Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982).

■ So here, the Court must decide whether the Director has a better than negligible chance of prevailing on the unfair labor practice charges named in the Petition. These charges, in one way or another, touch upon and concern the suspension and subsequent discharge of George Boze, Jr.

Over the three days of the evidentiary hearing in this matter, substantial evidence was presented by both sides, direct and circumstantial, as to the circumstances of the Boze incident. Based on the evidence, the Court concludes that the events surrounding Boze's suspension and discharge are hotly in dispute in almost every regard. The evidence could support a finding that Caterpillar placed Haddad in his position for the purpose of engaging in conduct constituting unfair labor practices. On the other hand, the trier of fact could also find that Caterpillar placed Haddad in that position to deal with a performance problem it was having in a specific work area that was critical to Caterpillar's operation, as Caterpillar contends.

The Court, however, is only to determine whether a reasonable likelihood of success on the merits has been established. It is clear to this Court from the evidence presented that the Board has met its burden with regard to this prong of the analysis.

*Irreparable Harm and Adequate Remedy at Law:*

■ In *Szabo v. P\*I\*E Nationwide, Inc.,* 878 F.2d 207 (7th Cir.1989), the Seventh Circuit stated that Congress enacted § 10(j) to remedy situations where the Board has been unable "to correct unfair labor practices until after some substantial injury" results and in situations where persons violating the Act may "accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or preserve the status quo pending litigation." *Szabo,* 878 F.2d at 209–10, *quoting* S.Rep. No. 105, 80th Cong., 1st Sess. 8, 27 (1947). In *Szabo,* the Court voiced a concern in § 10(j) proceedings as to the threat to the effective enforcement of the Act caused by delays in the Board's dispute resolution process. *Szabo,* 878 F.2d at 209. The Court stated that the following should be assessed in a § 10(j) proceeding: (1) the need for an injunction to prevent frustration of the remedial purpose of the Act; (2) the degree to which the public interest is effected by a continuing violation; and (3) the need to restore the status quo. *Szabo,* 878 F.2d at 210. In addition, the harm alleged must be directed toward the public because "section 10(j) injunctive relief is not available to 'vindicat[e] ... private rights.'" *Szabo,* 878 F.2d at 210.

The irreparable harms alleged in this Petition can be grouped into two general categories. The Director contends that, because of the alleged unfair labor practices, Caterpillar employees are being chilled in exercising rights guaranteed by the Act and in their utilization of and participation in the Board processes during this ongoing labor dispute.

At the May 23–25, 1994 evidentiary hearing, to demonstrate irreparable harm, the Petitioner called Eugene Smith, Kevin Hollaway, Larry Petty, Bernice Cox, Roger Pentecost, Jim Hendricks, and Linda Kemper as witnesses. The Court will discuss its findings respecting the testimony evidence of each witness, seriatim.

*Eugene Smith*

Eugene Smith is an employee at Caterpillar's Mapleton, Illinois facility. Smith testified that, in September or October 1993, he did not file an unfair labor practice grievance on behalf of himself because he was in fear of retaliation. He also testified that, in effect, he gave the grievance information to someone else to initiate the grievance process. However, his decision not to file a grievance was made prior to Boze's November 10, 1993 suspension. In addition, Smith also testified that he did not file the grievance because his wife suffered from a serious illness and that filing the grievance would cause her further stress.

Following Boze's suspension, Smith temporarily separated from his wife, and, while separated from her, he decided to file the grievance after all. But then his family condition changed again, and he reconciled with his wife. Thereafter he changed his mind yet again and decided not to go forward with the grievance.

Based on this chronology of events, the Court finds that Smith's conduct relating to his grievance was not the result of any chilling effect caused by the Boze discharge and related matters.

*Kevin Hollaway*

Kevin Hollaway is a Union official. His duties include representing employees in the grievance procedure. If a disciplinary hearing is held, for example, Hollaway would represent the Union and the employee involved. According to his testimony, he represents over one thousand employees for the Union. He represented Boze when Boze was suspended and discharged.

There was no indication in Hollaway's testimony from which this Court could conclude that he has been anything but aggressive in performing his union duties. The testimony did not indicate that he has been or would be chilled in any way in the exercise of his duties as a Union representative.

Hollaway testified that he knew four people who had been chilled as a result of the

Boze incident. According to Hollaway: (1) Tony Roby purportedly stated, "I'm not doing anything or saying anything for him [Haddad] to get after me"; (2) Bill Saathoff allegedly saw Haddad run a stop sign in a cart, but Saathoff would not file a safety complaint because, "he doesn't want Mr. Haddad gunning for him"; (3) Steve Luckhart allegedly was trying to "bid on another job, ... because he felt Mr. Haddad was setting him up to discharge him."; and (4) Randy Grimes stated that "he didn't feel comfortable going over to the gear area to perform work on machines because he felt Mr. Haddad was watching him ..."

The Court did not give much weight to this evidence. The Director did not proffer these people as witnesses and did not give any reason for not calling them as witnesses.

### Larry Petty

Larry Petty is a union steward at Caterpillar's Chemical Components facility. He testified that he refrained from filing three grievances on unrelated issues after Boze's suspension. He testified that he would not file the grievances because he was afraid of retaliation from Caterpillar following the Boze incident. He did, however, file 9 or 10 other grievances.

When questioned concerning why some grievances were filed and not others, he stated that he only filed grievances if they were frivolous and would not cost Caterpillar a lot of money. Later, when asked what the dollar cut off amount was for a decision to file a grievance, he stated, "I don't think they go by dollars." Upon more specific examination, he stated, "I've not drawn the line on the money."

Furthermore, Petty's grievance filing habits did not change following the Boze incident. He has filed a total of approximately ten grievances. Approximately six grievances were filed since November 1993—two for himself and four for others he represented as a union steward. One charge, filed on November 18, 1993, was filed only eight days after Boze was suspended. In addition to this, Petty provided the Board with an affidavit in February 1994.

This Court finds no indication that Petty was chilled in terms of his conduct or in the performance of his duties as a union steward because of the Boze incident.

### Bernice Cox

Bernice Cox testified that she was contacted by the Board for purposes of testifying at trial concerning the treatment of employees who crossed picket lines and those who did not cross. Cox testified that she would not meet with the Board attorney because she was afraid.

This Court believes that Cox is the type of person who would not come forward on her own to complain about mistreatment that she believes she received from Caterpillar. Cox appeared bewildered or stupefied about the hearing, the labor dispute, and the Boze incident. She summed up her confusion by saying, "so much is going on now, I don't know." This Court doesn't believe that she would feel any differently about testifying for the Board whether the testimony was before or after the Boze incident. Cox's reluctance to come forward on her own is the result of her being the kind of person she is. Her testimony does not demonstrate that a chill resulted because of the facts surrounding the Boze incident.

### Roger Pentecost

Roger Pentecost works at Caterpillar's Mossville, Illinois facility under Haddad's supervision. He testified that he removed union-related stickers from his toolbox because he was afraid of Haddad. He testified that he was chilled from filing a grievance concerning a conversation he had with Haddad about the toolbox stickers because he did not want to cause waves.

Pentecost testified, however, that he wore T-shirts and buttons bearing union insignia and slogans. One such T-shirt bore the question, "Where's George?" in reference to the George Boze, Jr. incident. He also testified that he had no fear of being a witness in a Board action. He filed an affidavit with the Board on December 6, 1993. He demonstrated no hesitation in testifying before this Court.

This Court finds no chill with respect to Roger Pentecost.

*James Hendricks*

James Hendricks is also an employee at Caterpillar's Mossville facility under Haddad's supervision. He testified that he had refused to file a grievance against Haddad arising out of an incident because Haddad "holds grudges." Yet he later filed a grievance regarding the same incident. He testified that he was not afraid to testify regarding the Boze incident, and he has given two affidavits to the Petitioner. Hendricks wore a black arm band to work bearing the acronym "UAW" both before and after the Boze incident. Hendricks also testified that he was not aware that Boze was discharged for engaging in union activity until the hearing before this Court.

The Court finds no indication of a chill with respect to James Hendricks, especially in light of the testimony that he had no knowledge of the circumstances surrounding the Boze incident prior to this hearing.

*Linda Kemper*

Like the others, Linda Kemper does not appear to be chilled by the Boze incident. She demonstrated no reluctance or shyness to express herself before this Court. If anything, Kemper appeared angry at Haddad, not fearful or intimidated. She testified that Haddad had questioned her union activity, and in response she told him that she did not have "a flying rat's ass of an idea what he was talking about." Kemper stated that she was not afraid to testify or give statements to the Board. She also said that she was unaware that Boze was fired because of union activity.

The Court believes Linda Kemper is not chilled with regard to pursuing any complaints against Caterpillar.

Other evidence in this case also demonstrates that Caterpillar employees were not chilled as a result of the Boze incident. There are approximately 90 unfair labor practice complaints presently pending with the Board. Of that number, approximately 39 complaints were filed after November 10, 1993. Approximately 36 of the pending complaints are from the Peoria area Caterpillar facilities. Approximately 70 unfair labor practice charges have been filed against Caterpillar with the Board since November 10, 1993. Of those 70, approximately 29 charges have been filed in the Peoria area. In addition, over 100 affidavits have been provided to the Board by Caterpillar employees from November 1993 through April 1994.

In order for this Court to find irreparable harm in this matter, the Court would have to find that Caterpillar employees were chilled from engaging in union activities or chilled in their participation in the Board's processes. The evidence in this case shows no diminution of union-related activities since the suspension of Boze. The Court finds no evidence indicating that Union employees are reluctant to file complaints or charges against Caterpillar or that the Petitioner has had difficulty obtaining witnesses to testify or provide affidavits as a result of the Boze incident or any action by Caterpillar.

While it will not alter the outcome of this holding, the Court is troubled by references made to the Board's processes in some of Caterpillar's communications to its employees. For example, the Court is concerned about the statements made by Caterpillar to employees referring to the length of time necessary to resolve this type of labor dispute. These statements could be interpreted as a deliberate effort on Caterpillar's part to chill employee participation in the Board's processes or in engaging union activities protected by the Act. While the other evidence in this case sufficiently overcomes this concern, the Court feels that mentioning this concern is prudent in light of the ongoing nature of this labor dispute.

In summary, the Court finds that the Petitioner has not met the burden of establishing irreparable harm.

The issue of an adequate remedy at law in this matter is inextractably intertwined with the irreparable harm issue. For this reason, the Seventh Circuit combined these requirements in the analysis for granting preliminary injunctive relief. *See Abbott Laboratories*, 971 F.2d at 11–12; and *Local 150*, 994 F.2d at 1279. The Court adds, however, that if the Petitioner in this matter succeeds on the merits of the underlying charges the Board will have the authority to make the

injured parties whole at law. For example, the Board has the power to order Boze back to work and to order back pay.

Pursuant to the rule of law in the *Local 150* and *Pioneer Press* cases and the framework set forth in the *Abbott Laboratories* case, this Court's inquiry into whether to grant preliminary injunctive relief is completed upon a finding that the Petitioner has failed to establish "irreparable harm."

### CONCLUSION

For the reasons set forth above, Petitioner Glenn A. Zipp's Second Amended Petition for temporary injunctive relief pursuant to § 10(j) of the National Labor Relations Act is Denied.