KAREN NELSON MOORE, Circuit Judge,
dissenting.
Despite agreeing with much of the majority’s analysis in this case, I must dissent because the majority has assumed a role assigned to a district court. The majority concludes that Gary W. Muffley, the Regional Director of the Ninth Region of the National Labor Relations Board (the “Director” and the “Board,” respectively), has established that there exists reasonable cause to believe that the defendants engaged in unfair labor practices. I agree. These unfair labor practices, according to the majority, included failure to hire lega *837 cy Teamsters employees and to recognize the Teamsters as the incumbent representative where Voith Industrial Services, Inc. (“Voith”) was a successor employer. I agree. The majority further concluded that there is reasonable cause to believe that Voith’s unfair labor practices also included unlawful assistance to and recognition of the United Auto Workers (UAW). I agree. In reviewing the district court decision, the majority properly points out that “it is precisely, and only, during the pendency of the administrative proceedings that the district court is authorized to grant interim injunctive relief under § 10(j),” Maj. Op. at 834, correcting the district court’s mistaken view that a district court “is forbidden from usurping the power of the [Board] by [issuing a § 10(j) injunction],” Muffley v. Voith Indus. Servs., Inc., 906 F.Supp.2d 667, 672 (W.D.Ky.2012). I agree. However, rather than holding, as an appellate panel at this point must, that the district court abused its discretion by basing its decision on an incorrect understanding of the law, and remanding with proper instructions, the majority simply has discarded its role as a reviewing court and has assumed the role of the district court to determine for itself whether interim injunctive relief is just and proper. Because the majority improperly enlarges the role of the appellate courts, I must respectfully dissent.
Under § 10(j), the Board has the “power ... to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred ..., for appropriate temporary relief or restraining order.... [T]he court ... shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.” 29 U.S.C. § 160(j). Before issuing the temporary injunction, the district court must find “ ‘reasonable cause’ to believe that the unfair labor practices alleged have occurred”- and that “injunctive relief is ‘just and proper.’ ” Fleischut v. Nixon Detroit Diesel, Inc., 859 F.2d 26, 29 (6th Cir.1988). This extraordinary remedy is intended to be limited to “those situations in which the effective enforcement of the [National Labor Relations Act (“NLRA”) ] is threatened by the delays inherent in the [Board’s] dispute resolution process.” Szabo v. P*I*E Nationwide, Inc., 878 F.2d 207, 209 (7th Cir.1989).
“Petitioner’s burden of showing ‘reasonable cause’ is ‘relatively insubstantial,’ inasmuch as the proof requires only that the Board’s legal theory underlying the allegations of unfair labor practices be ‘substantial and not frivolous’ and that the facts of the case be consistent with the Board’s legal theory.” Ahearn v. Jackson Hosp. Corp., 851 F.3d 226, 237 (6th Cir.2003). Rather than proving a violation of the Act or showing the validity of his theory of liability, the Director must produce only some evidence supporting a substantial, non-frivolous theory of liability. See Fleischut, 859 F.2d at 29. Consequently, the district court’s duty is to determine whether facts exist that support the Director’s non-frivolous theory of liability, not to resolve conflicting facts. Id.
Injunctive relief under § 10(j) is authorized under a showing that such relief is “just and proper” rather than the more stringent standard of irreparable harm. 29 U.S.C. 160(j); see Fleischut, 859 F.2d at 30 n. 3. In determining whether an injunction is “just and proper,” a district court must recognize that “section 10(j) was added to give the Board a means of preserving the status quo pending the completion of its regular procedures.” Levine v. C & W Mining Co., 610 F.2d 432, 436 (6th Cir.1979). “By the same token, the relief to be granted is only that reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a *838 substitute for the exercise of that power.” Kobell v. Suburban Lines, Inc., 731 F.2d 1076, 1091 (3d Cir.1984). Consequently, where “the circumstances of a case create a reasonable apprehension that the efficacy of the Board’s final order may be nullified, or the administrative procedures will be rendered meaningless,” a preliminary injunction to preserve the status quo is proper. Sheeran v. Am. Commercial Lines, Inc., 683 F.2d 970, 979 (6th Cir.1982) (internal quotation marks omitted). This circuit has adopted the Second Circuit’s definition of the status quo as “the status quo which is to be preserved or restored is that which existed immediately prior to the commission of unfair labor practices, not that which came into being as a result of the very acts being litigated.” Levine, 610 F.2d at 437.
We review the district court’s factual determination whether there is reasonable cause to believe that the defendants have committed unfair labor practices for clear error and review the district court’s conclusion that injunctive relief is not just and proper under the abuse-of-discretion standard. Schaub v. W. Mich. Plumbing & Heating, Inc., 250 F.3d 962, 969-70 (6th Cir.2001). “It is an abuse of discretion for a district court to commit legal error or find clearly erroneous facts.” United States v. Holden, 557 F.3d 698, 703 (6th Cir.2009); see also Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1249 (6th Cir.1997) (“We review the grant of preliminary injunctive relief for an abuse of discretion, reversing where the district court has committed legal error or relied upon clearly erroneous factual findings.”).
In this case, the district court made two legal errors, misunderstanding both the status quo that § 10(j) was enacted to preserve and the nature of § 10(j) relief itself. The district court equates the status quo to the positions of the individual employees. See Muffley, 906 F.Supp.2d at 672 (surmising that “the status quo of indefinite layoff remains at the current time”). The status quo meant to be preserved is not the individual employees and their positions, but rather the status quo of the labor relations. See Ahearn, 351 F.3d at 240 (affirming a § 10(j) injunction that restored a terminated employee not to her previous position and schedule, but to the job type in which she would have been working were it not for the unfair labor practice). One Sixth Circuit panel, after defining the status quo as the condition “existing prior to the adoption of the unfair labor practice,” Kobell v. United Paperworkers Int’l Union, 965 F.2d 1401, 1410 (6th Cir.1992), ordered a union to sign an agreement to which it would have agreed but for that unfair labor practice. Id. That panel concluded that ordering the parties to enter into a contract that was not in effect when the unfair labor practice took place is what “would return the parties to the status quo and protect the remedial powers of the Board.” Id. Thus, this circuit has recognized that § 10(j) seeks to protect the status quo by allowing injunctive relief that restores what would have happened but for the unfair labor practice.
Rather than engaging with whether the district court has misunderstood the status quo, the majority “[a]ccept[s] that the Director may be seeking restoration of the status quo” in order to reach the “critical question ... whether the interim injunc-tive relief being sought is reasonably necessary to preserve the Board’s ultimate remedial power once the administrative proceedings have concluded.” Maj. Op. at 834. The district court has simply not reached this question — failing to determine whether the Board’s enforcement of the NLRA will be impaired if no § 10(j) injunction issues — because the district court misunderstood the nature of § 10(j) relief, *839 its second legal error. Instead, the district court’s opinion focused on the inappropriateness of providing the § 10(j) remedy itself ahead of a full hearing before the Board:
Rather than seek a return to the status quo, the Director seeks affirmative in-junctive relief to right the perceived wrongs in (1) failing to consider and/or employ the [Cooper Transport] employees for yard work, and (2) failing to recognize the Teamsters, along with other alleged unfair labor practices which flow from these. The court is forbidden from usurping the power of the [Board] by taking such action.
Muffley, 906 F.Supp.2d at 672. This lack of analysis and the strong language regarding what is “forbidden” to the court reveal that the district court concluded that it lacked the power to issue injunctive relief.
In fact, the district court is empowered by § 10(j) to grant this remedy in order to protect the Board’s remedial powers before the Board has ruled. Under § 10(j), the Board has the “power ... to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred ..., for appropriate temporary relief or restraining order.... [T]he court ... shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.” 29 U.S.C. § 160(j).
The district court’s error was not isolated. It concluded its opinion by refusing to “unseat workers and the UAW prior to any adjudication of the complaints by the [Board].” Muffley, 906 F.Supp.2d at 673.[6] The purpose of § 10(j) is to allow district courts to issue temporary injunctive relief prior to adjudication by the Board. Thus, this statement reveals a deep misunderstanding of the purpose of § 10(j). Moreover, this misunderstanding is confirmed by the district court’s opinion’s next sentence:
Thus the cases of Bloedorn ex rel. NLRB v. Francisco Foods, Inc., 276 F.3d 270 (7th Cir.2001) and Scott ex rel. NLRB v. El Farra Enter., Inc., 863 F.2d 670 (9th Cir.1988) are distinguishable, as they both involved interim injunctive relief considered after securing a favorable Board ruling.
Id. In both cases cited, circuit courts of appeals reversed and remanded district court denials of injunctive relief, and in both cases, the Board had not completed its review process. See Scott, 863 F.2d at 675 (noting that the decision to issue a § 10(j) injunction is made “pending Board review”); Bloedorn, 276 F.3d at 284 (noting that the preliminary decision by a hearing officer did not come until nearly two months after the district court decision). The purpose of the injunctive relief is to preserve the status quo pending final adjudication by the Board. Once the Board has issued its decision, this order replaces and dissolves the § 10(j) injunction.
The majority recognizes this legal error by the district court. See Maj. Op. at 834 (noting that “the district court attempted to distinguish two cases,” but that “neither case can be distinguished” on the district court’s basis). The majority contradicts the district court’s opinion that issuing in-junctive relief before the Board has ruled would be usurping the Board’s power by unconditionally stating that “it is precisely, *840 and only, during the pendency of the administrative proceedings that the district court is authorized to grant interim injunc-tive relief under § 10(j).” Id. at 834. Up to this point, the majority and I are basically in agreement.
The majority, however, portrays this explicitly stated incorrect conclusion of the district court — that to order interim relief would be usurping the Board’s power — as merely the district court’s “implication.” Id. Instead, the majority states that “it is evident from the district court’s decision that it recognized its authority to order interim relief but declined to exercise that discretion in advance of the ALJ’s decision because it would require the unseating of both current employees and the UAW.” Id. This statement is truly astounding. Nowhere can I find any evidence in the district court’s opinion that it recognized its authority to order interim relief. It appears that stating that such a view is “evident” is all that the majority can do because it quickly concedes that the district could did not “explicitly discuss[] whether interim relief was reasonably necessary to preserve the Board’s remedial powers.” Id.
Other than declare that it had no power to provide interim relief, all that the district court did was attempt to distinguish two cases in which interim relief was granted. See Muffley, 906 F.Supp.2d at 672-73 (calling Frye v. Specialty Envelope, Inc., 10 F.3d 1221 (6th Cir.1993), and Small v. Avanti Health Sys., LLC, 661 F.3d 1180 (9th Cir.2011), inapposite and explaining why, in the district court’s view, this case is unlike them). The majority notes this discussion and concludes that “[i]t is not difficult to see that interim relief would be just and proper in the case of an employer that has refused to bargain with its employees’ union to escape having to bargain with a union,” Maj. Op. at 834, a conclusion with which I wholeheartedly agree. However, showing that this case is distinguishable from two cases where interim injunctive relief was granted fails to answer the question whether interim in-junctive relief is just and proper in this case. Answering the majority’s “critical question ... whether the interim injunc-tive relief being sought is reasonably necessary to preserve the Board’s ultimate remedial power once the administrative proceedings have concluded,” id. at 834, will provide the answer to whether such relief is just and proper. Yet, the district court simply does not grapple with this question.
Finding no analysis regarding its “critical question,” the majority performs the analysis itself. See id. at 836-37 (laying out arguments by both sides and then, after acknowledging that “the district court did not specifically discuss these issues,” concluding that injunctive relief is not “reasonably necessary to protect the Board’s power to remedy the harm from the unfair labor practices once a final administrative decision is issued,” id. at 836). The majority further reveals its error when it notes that “Voith persuasively argues [that] there is no reason to believe in this case that the denial of interim injunc-tive relief will allow support for the Teamsters to erode to the point that the Board will be unable to adequately remedy the harm resulting from the alleged unfair labor practices.” Id. at 836. Whether or not Voith may have the better argument, it is a district court’s role to make this determination. Once the majority determined that the district court’s ruling was based on an incorrect understanding of the law and that the district court failed to determine whether interim injunctive relief was just and proper — that is, failed to answer the majority’s critical question — the majority should have concluded its inquiry. After all, discretion exercised under an erro *841 neous understanding of the law is an abuse of discretion. Dayton Area Visually Impaired Persons, Inc. v. Fisher, 70 F.3d 1474, 1480 (6th Cir.1995) (noting that “a challenge to the grant or denial of a preliminary injunction under the abuse of discretion standard” will succeed when “the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard” (internal quotation marks omitted)).
The majority’s conclusion is especially unfortunate. It plainly states that the majority “examin[ed] whether interim relief would be just and proper in the first instance.” Maj. Op. at 836 (emphasis added). Such an examination was necessary because the district court failed to perform the analysis. This failure was legal error and an abuse of discretion. The majority oversteps our role as circuit judges by performing this analysis itself. It is the role of a district judge to determine from evidence presented and findings made whether § 10(j) injunctive relief would be just and proper. I would hold that the district court has abused its discretion, vacate the district court’s judgment, and remand with instructions to perform the “just and proper” analysis.
For these reasons, I respectfully dissent.

. As stated earlier, while the replacement of the newly hired workers and the UAW as their recognized representative is likely to be the result of the injunction the Director seeks, such an injunction would merely restore the status quo of the labor situation before the unfair labor practices took place.